## Hanna, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Grade crossing—" Stop, look and listen "—Death—Presumption—Evidence.*

The presumption is that one about to cross a railroad track at grade did his duty by stopping, looking and listening, and this presumption can only be overcome by testimony showing or tending to show that he failed to observe the precautions required by law.

In an action against a railroad company to recover damages for the death of plaintiff's husband at a grade crossing, the evidence tended to show that at the place of the accident the railroad tracks ran north and south a short distance west of and parallel with a river. Between the river and the railroad was a public road, also running north and south, on which the deceased was driving. An ice house 739 feet and a battery wall 363 feet, both south of the crossing, were located between the public road and the railroad. From the battery wall there was a down grade until the road reached a bridge which crossed a small stream 109 feet south of the crossing. The road at the bridge was twelve feet below the level of the railroad tracks. At the crossing there were five tracks. The deceased was driving his team north on the road. At the ice house he stopped his team and looked for trains. He again stopped at the battery wall, got off his wagon, walked around his horses, then stood on the wheel of his wagon and once more looked for trains. He then proceeded on his way until he reached the bridge, where he stopped and looked another time. He was not seen by any one, so far as the testimony disclosed, from the time he stopped at the bridge, until he was struck and killed by a train running north on the third track. *Held*, that it was error to enter a compulsory nonsuit.

Argued Jan. 18, 1905. Appeal, No. 181, Jan. T., 1904, by plaintiff, from order of C. P. No. 5, Phila. Co., Dec. T., 1902, No. 4066, refusing to take off nonsuit in case of Sarah Hanna *v.* Philadelphia and Reading Railway Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before RALSTON, J.

At the trial the court in awarding a nonsuit said:

The deceased was driving on the river road, which runs in a generally northerly direction and parallel with the tracks of the defendant company. Upon reaching an ice house at the side of the road, a distance of 739 feet from the rail-

road crossing, he was seen to stop and rest his horses. He then drove on until he reached a place known as the "battery wall," 363 feet from the crossing, and on a level with the tracks. At this point he was seen to look south along the railroad tracks. He then drove on and was next seen with the hind wheels of his wagon resting upon a bridge over a small stream 109 feet from the railroad crossing and twelve feet below the level of the tracks. At this point, the road curved, and the grade sloped upward to the crossing. Immediately to the south, on the first and second tracks, there were stationary coal cars extending some distance below the crossing.

The plaintiff's horses were struck by a north-bound express train as they got upon the third track. The deceased was thrown from his wagon and killed. There was evidence by the witnesses who saw the accident that they heard no whistle blown or gong sounded. The question to be considered is, whether or not his death was due to contributory negligence. He was shown to stop, look and listen, at a point 363 feet from the crossing, which is too remote to comply with the rule of law. He was next seen to stop at a point 109 feet from the crossing, and twelve feet below the grade. There is no testimony to show that he had a view of the tracks from this place, on the contrary, Harry Nippes and Thomas E. Murry testified that it was necessary to walk up to the tracks in order to see an approaching train. In the opinion of the court, if the deceased had looked at a proper place before driving upon the track, he would have seen the train approaching. As his view of the tracks was obstructed by the coal cars, it was his duty to alight from the wagon and lead his horses to a point where he could see. If he had done this he would have seen the train. He must, therefore, either have seen the train and driven directly in front of it, or he must have tried to cross the tracks without looking; in either case he was negligent.

The nonsuit is granted.

*Error assigned* was refusal to take off nonsuit.

*Frank M. Cody*, of *Cody & Develin*, for appellant.—All the cases upon the question of the presumption of the law that the decedent performed his duty, it is respectfully submitted, sus-

tain the plaintiff's contention : Lehigh Valley R. R. Co. v. Hall, 61 Pa. 361 ; R. R. Co. v. Weber, 76 Pa. 157 ; Schum v. R. R. Co., 107 Pa. 8 ; Cromley v. R. R. Co., 208 Pa. 445 ; McGill v. Ry. Co., 152 Pa. 331 ; Weiss v. R. R. Co., 79 Pa. 387 ; R. R. Co. v. Ritchie, 102 Pa. 425 ; Longenecker v. R. R. Co., 105 Pa. 328 ; Haverstick v. R. R. Co., 171 Pa. 101 ; Roberts v. D. & H. Canal Co , 177 Pa. 183.

Whether or not the decedent stopped at a proper place before crossing is for the jury : Whitman v. R. R. Co., 156 Pa. 175, 100 feet away ; Cookson v. Ry. Co., 179 Pa. 184, 175 feet away ; Elston v. R. R. Co., 196 Pa. 595, ninety feet away ; Seifred v. R. R. Co., 206 Pa. 399, sixty feet away ; Muckinhaupt v. R. R. Co., 196 Pa. 213 ; R. R. Co. v. Huff, 8 Atl. Repr. 789, forty-five feet away ; R. R. Co. v. Heileman, 49 Pa. 60 ; Ellis v. R. R. Co., 138 Pa. 506, thirty-three feet away ; Urias v. R. R. Co., 152 Pa. 326, eighteen feet away ; McGill v. Ry. Co., 152 Pa. 331, within thirty feet ; Newhard v. R. R. Co. 153 Pa. 417.

It is submitted, further, that before recovery can be barred, it must be clear and undisputed that the person killed did not comply with the rule, or that if he did so, he must have heard or seen the approaching train. If there be any doubt upon these points, the case must go to the jury : McNeal v. Ry. Co., 131 Pa. 184 ; Ely v. Ry. Co., 158 Pa. 233 ; Davidson v. Ry. Co., 171 Pa. 522 ; Gray v. R. R. Co., 172 Pa. 383.

*Gavin W. Hart*, for appellee, cited : Kinter v. Penna. R. R. Co., 204 Pa. 497.

OPINION BY MR. JUSTICE ELKIN, January 2, 1906 :

This is an action of trespass to recover damages for the death of the plaintiff's husband, who was struck and killed by a train of the defendant company at a grade crossing.

At the place of the accident the railroad tracks run approximately north and south, a short distance west of, and parallel with, the Schuylkill river. Between the river and railroad is a public road, also running north and south, on which the deceased was driving. An ice house 739 feet, and a battery wall 363 feet, both south of the crossing, are located between the public road and railroad. From the battery wall there is a

down grade until the road reaches the bridge which crosses a small stream 109 feet south of the crossing. The road at the bridge is twelve feet below the level of the railroad tracks. There are five tracks at the crossing. The deceased was driving a team north on this road. At the ice house he stopped his team and looked for trains. He again stopped at the battery wall, got off his wagon, walked around his horses, then stood on the wheel of his wagon and once more looked for trains. He then proceeded on his way until he reached the bridge, where he stopped and looked another time. He was not seen by any one, so far as the testimony discloses, from the time he stopped at the bridge until he was struck and killed by a train running north on the third track.

In the court below a nonsuit was granted, the learned trial judge holding that " if the deceased had looked at a proper place before driving upon the tracks, he would have seen the train approaching. As his view of the tracks was obstructed by the coal cars, it was his duty to alight from the wagon and lead his horses to a point where he could see. If he had done this he would have seen the train. He must, therefore, either have seen the train, and driven directly in front of it, or he must have tried to cross the tracks without looking. In either case he was negligent."

The question therefore arises whether under the testimony offered by the plaintiff, it was the duty of the court to hold as a matter of law that the deceased was guilty of such contributory negligence as to preclude a recovery in this action. The evidence does not disclose what the deceased did immediately before starting over the crossing. It does show that he had stopped and looked at the ice house, again at the battery wall, and still again at the bridge. These facts conclusively show that he had exercised the greatest care possible under the circumstances until he reached the bridge. What he did after leaving the bridge is only a matter of conjecture or inference. Under these circumstances he is entitled, by the settled rule of law, to the presumption that he did his duty, and this presumption can only be overcome by testimony showing that he failed to observe the precautions required by law : Penna. Railroad Co. v. Weber, 76 Pa. 157 ; Weiss v. Penna. Railroad Co., 79 Pa. 387 ; Longenecker v. Penna. Railroad Co., 105 Pa.

328; Schum v. Penna. Railroad Co., 107 Pa. 8; Cromley v. Penna. Railroad Co., 208 Pa. 445.

The learned counsel for appellee admits the force and effect of this rule as applied to the present case, but contends that the presumption of the deceased having done his duty is rebutted by the testimony offered by the plaintiff. The answer to this position is that there is no evidence in the case showing what the deceased did immediately before going on the crossing. The learned counsel argues that under the circumstances it was the duty of the deceased to lead his horses to a place where he could see the approaching train, and if he had been leading his horses he could and would have been seen by Mrs. Nippes. This does not necessarily follow. In the first place it is doubtful whether under the facts proven and circumstances established the court was justified in holding as a matter of law that it was the duty of the deceased " to alight from the wagon and lead his horses to a place where he could see." The testimony did not clearly show that the view of the deceased was so obstructed as to require him to alight, nor does it show just what position of danger the deceased was in as the train approached, and whether he exercised such care as was required of him under the circumstances. But, even if it be conceded that it was his duty to alight and lead his horses, in the absence of evidence showing that he did not do so, the presumption is that he did perform whatever duty the law required of him.

The testimony of Mrs. Nippes is not sufficient to overcome this presumption. In answer to questions by counsel and court, she testified " I didn't see the man." At another time this witness said she did not see the man either before or after the accident. It requires a degree of ingenuity, not convincing to the court, to support the contention that the negative testimony of this witness is to be construed into affirmative testimony showing that the deceased had failed in the performance of a legal duty. The witness does not say whether deceased was leading his horses, or walking beside, or sitting upon, his wagon. She does not know where he was, nor has any other witness testified to the whereabouts of the deceased at the time of the accident. Certainly, such negative, uncertain and unconvincing testimony as this cannot be held to overcome the legal presumption in his favor. On the other hand, the presumption

that the deceased did his duty before going on the tracks, is strengthened by his course of action on his way to the crossing. He stopped three times to look for approaching trains, and may or may not have stopped a fourth time.

These facts added to the legal presumption that he exercised due care make a particularly strong case in favor of the plaintiff.

It is earnestly contended that this case is ruled by Kinter v. Penna. Railroad Co., 204 Pa. 497. We think not. In that case it was held to be the duty of Kinter to stop, look and listen at a place where he could see the approaching train. The evidence showed that he did not stop at such a point, and, it being conceded that he could not see where he did stop, it was for the court to say that he had not observed the rule requiring him to look. In the present case there is no evidence to show that the deceased did not stop at a place where he could see the approaching train, or that there was a better place of view where he should have stopped, or that he failed in the performance of any duty required of him by law. On these vital questions the evidence discloses nothing. The legal presumption, in the absence of evidence, is that he did stop at a place where he could see, that it was the proper place to stop, and that he performed his duty. It is clear, therefore, that the rule in that case is not applicable to the one at bar.

The question of defendant's negligence has not been raised here, nor was it considered by the court below. When, however, the case is again tried it should not be overlooked that the first and primary question to be determined is the negligence of the defendant. The contributory negligence of the deceased is predicated upon and presupposes the negligence of the defendant. If the testimony does not show negligence by the defendant there can be no recovery no matter how free from negligence the facts show the deceased to be. The defendant is entitled to the benefit of the presumption that through its agents and employees it did its duty in approaching the crossing. There must be affirmative evidence to rebut this presumption else there can be no recovery. If the case stands on presumptions alone, no evidence having been offered either as to the defendant's negligence or the contributory negligence of the deceased the presumptions would be equal, and the action

to recover damages could not prevail.    The burden of showing negligence by the defendant rests on the plaintiff and must affirmatively appear from the evidence.    It is true there is some evidence, negative in character, of the failure to blow the whistle and ring the bell as the train approached the crossing. Whether this evidence is sufficient to rebut the presumption that these duties were performed is a question not raised by this appeal, and it is therefore unnecessary to review this branch of the case.

Judgment reversed and a procedendo awarded.