Musto *v.* Lehigh Valley Railroad, Appellant.

Argued April 23, 1937; reargued May 19, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*John J. McDevitt, Jr.,* with him *Joseph M. Leib* and *John J. McDevitt, III,* for appellant.

*Earle Hepburn,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 25, 1937:
This is an action for damages for personal injuries. On September 17, 1932, plaintiff resided near the tracks

of defendant company in Pittston. About 11 a. m. on that date he was walking along a path eighteen inches wide on an alleged permissive right-of-way which led across the railroad. As the path neared the tracks there was a four-foot sloping bank. Plaintiff claims that when he was on this sloping bank, six feet away from the first rail (or four feet from the overhang of the train) and three or four feet above the level of the tracks, he saw a freight train coming and he then stopped, that on this train there was "a pole, stick, or other device" which extended out "far beyond the overhang of the train," and that this struck him and threw him under the train in such a manner as to cause the crushing of his left foot. There were two tracks at the place of the accident. The train was coming on the track nearest to the plaintiff and from his left. The track was described as a "sort of circle." Plaintiff was standing on the circle's convex side. He testified that while the train was passing "there was a pole extending out. It struck me on the side and knocked me off my feet." He said that he did not see this pole *before* it struck him, that his "feet went towards the tracks" and the wheels crushed the toes of his left foot, and that he saw the pole *as* it struck him and it was "about seven feet long and about six inches thick in the center."

Plaintiff was corroborated by a witness who was his companion at the time and place in question. This witness described the thing which projected as follows: "I don't know whether it was a pole or a piece of iron pipe. I could not see it so good." He said it was "about five inches round and about six or seven feet long" and it was "moving towards the engine." He added: "I was looking at the pole while the engine was going by. I turned around and I seen Joe laying on the ground unconscious. He was laying on his back, with his foot about a foot or half a foot away from the track." He did not see the plaintiff when he was hit.

After trial the jury returned a verdict in favor of plaintiff in the amount of $7,500. Defendant filed motions for judgment n. o. v. and for a new trial. Both motions were overruled. Defendant appealed.

It is contended by the defendant that there was no pole or stick on the train. The engineer, the fireman, the conductor and the flagman of this train all testified that there was no pole carried on the engine or the cars, that "shunting poles" had not been used for fifteen years and that, at the time they were used, they never were used on freight trains but only in the yards. A car and air-brake inspector testified that a short time before the accident he inspected this train at Coxton, a few miles from the place of the accident, and that there was nothing whatever on any part of the train answering the description of the pole or stick which plaintiff alleged struck him. It was also testified that a few miles north of the place of the accident the train passed through two bridges. One of these bridges was 7 feet 9 inches from the center of the track to the rail on the side of the bridge. In other words, the side of the bridge was 2 feet 4 inches from the overhang of the train. The inference is that a stick projecting from the train four feet would not pass through this bridge. The defendant also argued that if the plaintiff had been struck by a pole projecting from the train while standing on the convex side of the curve the plaintiff would not have been hurled under the train but away from it.

The hospital history of plaintiff's case as given by the man who brought him there set forth that the plaintiff was picking coal alongside of the tracks as the train was passing by and in some way his foot was caught. The interne at the hospital testified that later the plaintiff obtained possession of the chart which contained this history and after reading it over he said there was a mistake, that he was not picking coal, he was walking along the tracks, he slipped and that in this way his foot was run over by the engine. The interne also tes-

38

tified that the man had no injuries other than the injury to his foot. He was asked these questions and made these answers: "Did he have any blows or any marks of violence on his body such as would have been the case of a train traveling forty or forty-five miles an hour striking him? A. None whatever. Q. The only injury was what happened to the toes of the foot. A. To the foot."

All this testimony while strongly persuasive of defendant's claim that the plaintiff was not injured as he testified raised a question of fact for the jury, *provided plaintiff first made out a prima facie case of negligence.*

The defect in plaintiff's case is that it is based on the assumption that defendant was an insurer of the safety of a bare licensee who was standing near the track within defendant's right-of-way. No prima facie case was made out by the plaintiff. His evidence amounted to nothing more than proof that he was struck by a pole extending from defendant's train and knocked off his feet and the wheels crushed the toes of his left foot. This court said in *Joyce v. Black,* 226 Pa. 408, 75 A. 602, in which recovery was denied to a plaintiff who was injured by an ornamental bracket which fell from a building and struck him: "The rule res ipsa loquitur is not in this case, and affirmative proof of appellee's negligence was essential to a recovery." In *Hanna v. Philadelphia & Reading Railway Co.,* 213 Pa. 157, 62 A. 643, which was a case arising from the death of plaintiff's husband at a railroad crossing, while the case was sent back for a retrial on the question of the deceased's contributory negligence, this court, speaking through Mr. Justice ELKIN, said: "When, however, the case is again tried it should not be overlooked that the first and primary question to be determined is the negligence of the defendant. . . . If the testimony does not show negligence by the defendant there can be no recovery no matter how free from negligence the facts show the deceased to be."

In the Restatement of Torts, Vol. 2, sec. 342, page 932, appears this principle: "A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care to make the condition reasonably safe, or to warn them of the condition and the risk involved therein." While this principle is usually applied to cases where persons have come onto lands as licensees and have been injured by dangerous passive conditions existing on these lands, we believe its rationale is equally applicable to the instant case. The basis of the principle is that the possessor of land is not liable to a bare licensee for something on that land which injured the licensee unless the .possessor of land had knowledge of the condition and realized that it involved an unreasonable risk to the licensee and had reason to believe that the licensee would not discover the condition or realize the risk, and had permitted the licensee to enter or remain upon the land without exercising reasonable care toward him. In the instant case there is no proof that the defendant knew of the projecting stick or failed to exercise reasonable care in making up its train or otherwise showed any want of care toward any person who might be near that train on the defendant's right-of-way when the train passed.

In this case plaintiff did not show that the pole which he claims struck him was a part of defendant's train equipment or load or that there was any lack of inspection of the train on the part of defendant's servants or agents or that it had been there long enough to charge defendant with notice of its presence. From all that appears in this case, the alleged pole might have been something that was placed either by design or by acci-

dent upon defendant's train without the knowledge of defendant's employees. It might have been a stick which some bystander had thrown on the train or which had been caught up by suction and had become attached temporarily to defendant's train. We think the correct rule applicable to this case is laid down in section 2135 of 52 C. J. at page 571, as follows: "A trespasser or bare licensee on or near a railroad track cannot recover for injuries caused by articles projecting, falling, or being thrown from or by a train, unless the railroad company knew of the danger and of the injured party's peril and failed to use ordinary care to avoid the injury." Section 2296 of 52 C. J. lays down this principle (page 759) : "It is the duty of a railroad company to exercise ordinary care in inspecting cars in its trains and in repairing defects in appliances, or to discover objects projecting from the side of the cars which might injure pedestrians on highways near the track or persons on private premises near the track, and if a negligent failure. to do so results in injuries, the company is liable." No negligent failure to inspect its train or in repairing defects in appliances or in discovering objects projecting from the side of the locomotive or cars was either pleaded or proved in this case.

While no case substantially identical in its facts with the case at bar has been before the appellate courts of this State, such cases have been adjudicated in other jurisdictions.

In *Missouri-Kansas-Texas R. Co. v. Sowards,* 25 P. (2nd) 641, (Oklahoma), 1933, plaintiff below, while walking along a pathway marked by the travel of former pedestrians, a few feet outside of the rails of defendant's line, was struck by a piece of wood or metal, projecting out about three feet from the side of one of the cars, near the floor or brake of the car, of defendant's freight train. This struck him on the back of his left shoulder and hurled him against or under the train, which resulted in serious injuries to his feet, requiring amputation of

both. The train was made up and started within an hour before the accident and it was inspected three times before it departed. The Supreme Court of Oklahoma held: "The evidence shows without contradiction that the defendant railway company made careful and repeated inspections of this train extending up to a few minutes before the plaintiff was injured, and there is nothing whatever in the record to indicate any negligence in the manner of making these inspections or in the manner of the operation of the train. The railway company had the right to operate its train along and past this point, and in the absence of any proof of an affirmative act of negligence, or act of omission that would amount to negligence, we cannot hold the railway company liable for this injury. . . . The rules of law which are binding upon us, as well as upon the trial courts, require that negligence exist in such cases before there may be liability. . . . The judgment of the trial court is reversed, and the cause is remanded to the court, with directions to vacate the judgment and to dismiss this action at the cost of the plaintiff."

In *Hawthorne v. Texas & N. O. R. Co.*, 84 S. W. (2d) 1015, (Texas), 1935, plaintiff saw defendant's freight train coming while he was walking on the track and stepped aside and stood facing the train about three feet from the cars to let it pass. After the engine and ten or twelve cars were past, something struck him in the side and knocked or jerked him down and his leg was severed by the train. He did not know what it was that hit him, but said it felt like a rod. The Court of Civil Appeals of Texas said: "In his petition appellant charged the railroad company with negligence in operating its freight train with a projection extending approximately four feet in a horizontal position from the side of its cars in such way as would likely injure the plaintiff or other persons standing or walking near the track at a safe distance; in failing to give proper warning of such projection, and several other specific acts of

negligence. At the conclusion of appellant's evidence, the trial court instructed a verdict in favor of the defendant railroad. . . . The facts show that the track where appellant was injured was frequently used by pedestrians as a walkway, and appellee concedes that appellant was a licensee." That court held: "For aught the record shows, the alleged projection . . . may have been some piece of wire or other object picked up by the moving train along the track in such manner that the train crew, even by the exercise of extreme care and diligence, would not have known of it. The burden was, of course, upon the appellant to establish the acts of negligence alleged. The acts of negligence charged against the railroad company could not be inferred from the mere fact that the appellant received an injury while standing near the passing train. It was necessary for the proof to go further and raise a reasonable inference that the injury resulted proximately from some act of negligence on the part of the operatives of the train charged in the petition. . . . The rule of res ipsa loquitur has no application in this case, for the additional reason that the evidence fails to negative a reasonable probability that the injury complained of resulted from some cause other than the negligence of the railroad company. . . . Appellee's liability cannot be predicated upon a mere guess, surmise, or presumption. . . . Finding no error, the judgment of the trial court is affirmed."

In *Louisville & N. R. Co. v. Marlow*, 183 S. W. 470 (Ky.), there existed for twenty-five years or more between the railroad company's depot and a public road crossing, a distance of about 350 yards, a pathway on the railroad right-of-way, some four or five feet from the ends of the ties. Appellee, while traveling over this pathway, was struck and injured by a piece of *iron-pipe,* when the engine's tender of a freight train was even with him. He alleged that the company negligently permitted the piece of pipe to swing out or to be thrown from its train and strike him, or that same was pur-

posely or negligently thrown from the train by some of the agents and servants in charge of it. The Court of Appeals of Kentucky held: "In cities and towns or thickly populated communities, where the people generally have used the track of the railroad company for a considerable length of time, out of humane reasons and for a due regard for life and limb, the law raises a presumption that such use of the track is by acquiescence of the company, and imposes the duty upon it while using its tracks at that place in the operation of its trains to anticipate the presence of persons so using it, and to exercise a corresponding degree of care in approaching said place to keep a lookout to discover the presence of persons on the track then, and to exercise the same care in the control of the movement of its trains at such places, and to have them under reasonable control to prevent injury to any one so using the track at that place. . . . The appellee is not entitled to recover unless his injury was produced by affirmative or positive acts of negligence in causing the piece of iron to fly or be thrown from the train, for which there is no proof in the case. . . . In such cases as this, where the use of the right-of-way has been so long acquiesced in by a considerable number of the public as a walkway, the duty of anticipating the presence of the plaintiff upon the right-of-way at such place beyond the reach of the train would perhaps impose a duty upon the company to refrain from any positive acts of negligence which would likely result in injury to him while using the pathway; for instance, it could not have permitted anything attached to any part of its train by positive acts of its agents or servants to extend out over the pathway so as to be likely to collide with and injure him. . . . This injury was not produced by any affirmative or positive acts of negligence on behalf of the company or any of those connected with the operation of the train. The only testimony on this point is that about 200 yards south of the place of the accident some one

saw a piece of iron dragging by the side of the tender, but what, if any, connection it had with the equipment is not shown, nor is there any fact or circumstance appearing in the testimony from which it might reasonably be inferred the length of time that this pipe had been in the condition as observed by the witness or what caused its loose condition, and the case is evidently not one for the application of the doctrine of res ipsa loquitur, because the relationship sustained by the plaintiff toward the company while using the pathway at the place does not bring the case within that rule." To the same effect was the ruling of the Kentucky Court of Appeals in *Louisville & N. R. Co. v. Wade,* 36 S. W. 1125, in which case a fourteen-year-old boy was struck by a piece of timber projecting from a car of defendant's passing freight train. Recovery was denied because of failure of proof that the defendant's agents knew of the dangerous condition of the timber.

In *Preslar v. Mobile & O. R. Co.,* 185 S. W. 67 (Tennessee), plaintiff's intestate while walking between two freight trains was struck and killed by a piece of scantling that projected from the lumber car which was about seven cars back of the engine. The scantling protruded about six feet from the edge of the car on its east side. The track was straight enough to have permitted deceased to have seen the projection had he looked back. This piece of lumber scraped the cab of the engine on the side track in passing it, but the proof does not show when, if at all, before that it had become detached and swung out from the car. Actual knowledge of its projection on the part of the employees operating the through freight train was not shown, though it could have been seen from the engine and the caboose. The Supreme Court of Tennessee held in that case: "We think it manifest that until the employees operating the through train had knowledge, actual, or constructive, arising from the continued existence of the projection, there was imposed no duty towards deceased."

In *Chicago & E. I. R. Co., Aplnt., v. Reilly,* 212 Ill. 506, 72 N. E. 454, appellee, while standing at an intersection, was struck by a piece of scantling or timber protruding from 18 inches to two feet from a flat car in appellant's freight train, which was loaded with heavy timber. The Supreme Court of Illinois held: "The judgment in this case is sought to be sustained on the theory that the maxim res ipsa loquitur applies, and unless this contention is allowed to prevail the judgment will have to be reversed, for, unless the accident or injury sustained by the plaintiff bespeaks the defendant's wrong, there is no proof of culpable negligence. There is no evidence to show how the car of lumber from which the timber that caused the accident projected was originally loaded—whether skillfully or otherwise—or whether the projecting timber was the result of accident or negligence, or how long it had been in the position it was when it caused the injury. . . . We are of the opinion that the case at bar does not belong to that class of cases where the rule res ipsa loquitur can be applied, and unless it does, the peremptory instruction offered by appellant should have been given, and it was error to refuse it."

The cases relied upon by appellee and by the court below are distinguishable from the case at bar. In *Creighton v. Bloom,* 108 Pa. Superior Ct. 84, 165 A. 51, the rope which dangled from defendant's truck and wrapped itself around the side bar of the ladder and caused the support to collapse, was an integral part of defendant's load or equipment. A tarpaulin covered the truck and there were ropes attached to it dangling from the side. The Superior Court said: "We cannot hold as a matter of law that where a tarpaulin with a rope attached is dangling from the side of a truck that there is no element of peril to others in such a situation." The presence of the rope was known to defendant's employee, though he claimed he did not know it was "dangling." As the rope was under his control and as it had

a definite function to perform on that truck, it was the employee's duty to see to it that the rope would not "dangle" in such a way as to be a menace to the safety of others. If the stick which plaintiff in the case at bar claims struck him was a part of the train equipment, we would have a state of facts which would make the *Creighton v. Bloom* case applicable. From all that appears in the evidence, the offending stick was exotic to that train.

In *Dorris v. Bridgman & Co.*, 296 Pa. 198, 145 A. 827, referred to at length in the opinion of the court below, plaintiff was injured by a piece of pipe which projected from a trailer connected with a truck. Whenever the truck ran out of a straight line there was a swaying or circling motion of the pipe. The trailer was loaded with five-inch twenty-two-foot iron pipe which projected from the rear five feet. One of the pipes, weighing 150 pounds, overhung the side of the truck, beyond the body line, from twelve inches to two feet. This court held that under the circumstances it was the duty of the driver of the truck to know that "one pipe of its four ton load of heavy iron projected beyond the body line a foot or two." This court said: "Another view of the negligence comes from the testimony of one of plaintiff's witnesses. As plaintiff came to the curb she stepped down two feet, and waited for the truck to pass. The truck pulled out of the car tracks to get around a street car, and then swung back towards the tracks. This caused a fan-like motion of the pipes in the rear of the trailer, with the projection out two feet as a hook; its movement was like the swinging of a scythe, mowing down objects in the way. In this zigzag motion of the car, it caught the plaintiff. . . . In determining the sufficiency of the evidence of negligence, the sweep or path of the car, its speed and movement, and any projection beyond the body are to be considered. It is elementary law that where one uses on the highway a vehicle not properly loaded, he will be liable for any accident that may come

from such improper loading. Nor is the duty of the person using the machine to see that it is in proper condition lessened by the fact that the vehicle for any reason becomes improperly loaded while actually on the highway. Where one uses a motor vehicle on the highway, improperly loaded, or with any projection extending beyond the lines of the car, he will be presumed to apprehend any danger that may come from the ordinary movement of the vehicle, the trailer and any projections, and will be responsible for any injury occasioned thereby."

If in the case at bar the stick which struck the plaintiff (as he alleges) had been a part of a load of sticks carried as freight or otherwise and it had become loosened by reason of improper loading and had projected from the train and had injured the plaintiff, we would have a state of facts which would make the case just reviewed applicable.

The case of *Scott v. Davis*, 270 S. W. 433 (Missouri), was referred to in the opinion of the court below as "an almost identical case." There the plaintiff was permitted to recover damages for injuries sustained when he was struck by timber extending sixteen and one-half feet from the train while he was using "a beaten path" between the tracks. That case is distinguishable from this one. While the opinion of the St. Louis Court of Appeals does not expressly say so, the implication is that the projecting timber was part of a load of timber on the train. That court said: "The loaded freight train and its operation were peculiarly within the knowledge of defendant. The timber might not have projected had defendant used due care. This cast the burden of explanation on defendant." The court expressly stated that "the piece of timber projecting from the side of the car could have been seen from either end of the train" and that "there were two brakemen on this train, one on the engine and the other in the caboose. . . . It would have been no trouble for the brakeman

to see anything hanging out on this train." In the instant case, as already pointed out, there is no charge by plaintiff that the projecting stick was a part of a load of timber and therefore there is no basis for the inference that the stick would not have projected had the defendant used due care in loading its freight, nor is there any proof that the projecting stick was visible to any of the trainmen who were at their posts of duty.

It is the duty of those operating a train of cars on a railroad to exercise reasonable care to the end that the equipment and any load the train carries is in such condition that no part of the equipment or load will project from the train beyond the usual bounds or become so projected by the ordinary vicissitudes of the train's operation. If a part of the equipment or load does so project or is so projected from the train and personal injury to others results, an inference of negligence may legitimately arise. As to whether or not an inference of negligence is legitimate, each case must be judged on its own facts. When, as in the instant case, there is an absence of proof that the projection from the train was a part of the train's equipment or load, that defendant's employees knew of the projection or were under the circumstances chargeable with such knowledge, or that the train had not been carefully inspected within a reasonable time before the accident, the charge of negligence must be declared unsustained.

In view of this conclusion, it is unnecessary to discuss or decide whether or not plaintiff in standing within four feet of the side of the rapidly moving freight train whose oncoming was plainly visible to him was so testing a manifest danger as to warrant declaring him guilty of contributory negligence as a matter of law.

The judgment of the court below is reversed and is here entered for the defendant.