## Mamic *v.* Pittsburgh & West Virginia Railroad Company, Appellant.

Argued March 26, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Albert B. Graver,* with him *John S. Wendt,* of *Wendt & Graver,* for appellant.

*Warren H. Van Kirk,* with him *H. Russell Stahlman,* for appellee.

OPINION BY MR. JUSTICE MAXEY, April 14, 1941:

This is an appeal from a judgment secured by the plaintiff in a suit for personal injuries. His testimony was that he and a companion named Gudlin were walking from Avella to Rea, Pennsylvania, on route 28 on the morning of May 28, 1936, and when they reached the railroad crossing of the defendant company nearly 4 miles east of Avella about nine o'clock, they "took a smoke, and sat there for a while", and then they stood up. When defendant's eastbound freight train came along plaintiff looked at the locomotive until it passed and then "turned his back or side to the rail". Gudlin cried, "Look out!" Plaintiff turned his head and saw a plank sticking out from the railroad car. It hit him on his left arm or shoulder and knocked him down and his right arm went under the wheels of the train, almost completely severing it. "From two to five cars passed behind the locomotive before he was hit" and when he was struck he "was standing about four feet from the outside of the cars". He was taken to a hospital, where his right arm was amputated.

The contention of defendant is that the plaintiff received his injury by attempting to board the moving train some distance from the crossing. Plaintiff's companion, Gudlin, testified as a defense witness that he himself attempted to jump on the train, but "couldn't go on" and he then "motioned to Mamic six or seven cars away not to go, train going too fast." Gudlin then walked to the crossing and when he looked back again

Mamic was "hurt and falling down." He said Mamic was not then at the crossing but was "between the crossing and the bridge." Gudlin admitted on cross-examination that after Mamic's injury he, Gudlin, had told several persons that the injury was caused by Mamic's being struck by a board or plank that was sticking out about a yard from the side of a flat car on the train. He also had made an affidavit to that effect on January 17, 1938, nearly twenty months after the accident. He admitted that he had said he changed his story "after a railroad man came to see him". He asserted that the story he told on the witness stand was true and that his previous statement about Mamic being injured by a protruding board was made at Mamic's suggestion when Mamic was pleading with him to "help him" at the trial. He testified he told Mamic: "I cannot do that". It was also testified by one witness that Gudlin had stated to him in November, 1939, that Mamic had been injured by a board protruding from a car of the freight train but that he would not be a witness for him because he did not like him since he heard he (Mamic) had been a witness for the Commonwealth in a certain case. The defendant called witnesses who testified that shortly after Mamic was injured and while waiting to be taken to the hospital he had said: "Look what I did for a ride", and that when Gudlin said in Mamic's presence: "That is what it is to be a fool hopping trains", Mamic replied: "You always hop freights too". It was also shown that Gudlin while in the machine with Mamic on the way to the hospital had said that Mamic "was hurt attempting to jump on a freight train". (This was offered to prove that his story from the witness stand was not a recent fabrication). There was testimony that blood was found on and near the track on which the freight train had passed and at considerable distance from the crossing. This blood was noticed in the afternoon of the day of the accident and it was not shown whether or not it was human blood. This and

other evidence was offered by the defendant to show that plaintiff was not injured on a public highway, as he claimed, but that he was trespassing on the railroad's right-of-way and to support the defense that plaintiff was injured while attempting to board the train.

All this conflict in the testimony thus far reviewed was, of course, for the jury, if the case was submissible to the jury. The court did so submit the case and a verdict was returned for the plaintiff in the sum of $4,000. Defendant's motion for judgment n. o. v. was refused and this appeal followed.

The principle of law controlling this case was set forth in our opinion in *Musto v. Lehigh Valley Railroad*, 327 Pa. 35, 192 A. 888, (a case somewhat similar in its facts to the case now before us). We there said (p. 48) : "When, as in the instant case, there is an absence of proof that the projection from the train was a part of the train's equipment or load, that defendant's employees knew of the projection or were under the circumstances chargeable with such knowledge, or that the train had not been carefully inspected within a reasonable time before the accident, the charge of negligence must be declared unsustained." The present plaintiff offered no proof that the projection was a part of the train equipment or load or that the train had not been carefully inspected within a reasonable time before the accident. Plaintiff does claim that he proved that defendant's employees knew of the projection or were under the circumstances chargeable with such knowledge. If that claim is well founded the case was for the jury; otherwise it was not. Plaintiff's chief witness on this point was a friend of thirteen years standing, Joseph Parrish, who visited him in the hospital about three days after the accident. Parrish resided on a farm close to the defendant's railroad and near Avella. He testified that on the morning when the accident occurred he was taking a walk and while doing so a train of the defendant company passed him between 9 : 00 and 9 : 15

a. m.  He said he, while on the north side of the track, saw on a Gondola car a "four by six plank sticking out on the left hand side [i. e., on the north side as the train was travelling east] about 4½ feet."  He was asked: "What did you do?"  He answered: "I hollered to fireman, I pointed and said, Can't you see plank across the car?"  He said the fireman "was looking toward the back", that when he (Parrish) saw the plank and hollered "four or five cars had passed."  He said the fireman "started laughing at" him.  The witness then continued to Avella.  He asserted that the train from which the plank protruded was "the only one that came at that time, because they had poor business".  He said he was "absolutely sure only one train went by that day".  The witness did not see the accident but learned of it about 1:30 p. m. that day from Mamic's companion, Gudlin.  Another witness, John Marsh, testified that he resided fifty feet from Avella station and that a little after nine o'clock in the morning on the day of the accident he noticed on "about the third car" of the defendant company's train going East "a plank sticking out about three feet or four feet from the car".

This is all of plaintiff's testimony in support of his claim of notice given defendant's employees of the protruding timber.  It is not sufficient to sustain plaintiff's burden of proof.  The maximum of Parrish's proof is that he "hollered to the fireman" of this train, which it is conceded was travelling twenty-five miles an hour and that the fireman was then four or five car lengths away.  There is no proof whatever that the fireman *heard* what Parrish claims he said.  The only legitimate inference taking the circumstances into consideration is to the contrary.  It is a matter of common knowledge that a freight train consisting (as did this one) of "a locomotive and twenty-four all-steel cars" makes a noise which will drown any human voice in immediate sonantic competition with it and it would be impossible for a fireman on the locomotive of such a fast-moving steel

train to understand what an individual four or five car lengths away (i.e., at least 150 feet away) "hollered" to him. If the fireman laughed, as Parrish said he did, that would certainly not indicate that the fireman comprehended what he said. It is not unusual for bystanders to call out to passing trainmen or for the latter to smilingly or even laughingly return such greetings. We have not overlooked the fact that Parrish in answer to a question: "Did you talk low or did you talk loud?" replied: "Loud so he can hear", but that was merely Parrish's way of indicating that he "talked loud" *in the hope* that the fireman would hear him. He could not *know* that the fireman heard and understood him, and under the circumstances it is impossible to believe that the fireman did comprehend what he said. We cannot permit the jury to *guess* that he did. Conjecture has no probative value.

While (as we have often said) on a motion for judgment n. o. v. the testimony should not only be read in the light most advantageous to the opposing party, all conflicts being resolved in his favor and he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence, this principle in no way detracts from the burden resting on a plaintiff who charges negligence to make out a prima facie case affirmatively proving what he charges. We reiterated this in *Musto v. Lehigh Valley Railroad,* (supra). Without proof of negligence there can be no recovery. Such proof is wanting here.

The learned court below held that the instant case was not ruled by the Musto case because in that case there was no evidence of any notice to the railroad company of the existence of the pole which protruded from that train while in this case "it would seem to follow that if the jury believed the plaintiff's testimony that defendant had notice of the existence of the [protruding plank] and had an opportunity to remove the same, there was evidence of negligence". We can find in this record no

evidence that defendant had such notice. Such evidence must be found, if found at all, in Parrish's testimony and his testimony when carefully examined and analyzed falls short of being actual notice to any of defendant's employees. If there was proof that the fireman heard Parrish and understood what he claims to have said, we would have before us a different situation. Marsh's testimony is even less valuable to plaintiff than Parrish's. His seeing this plank on the train three miles from the scene of the accident does not prove that the plank was protruding long enough to charge the train crew with knowledge of it. A train travelling, as this train was, at a speed of twenty-five miles an hour would require only seven or eight minutes to travel from where Marsh saw it to where the accident took place.

An uncontrovertible physical fact in this case is that the train passed through the Craighead tunnel 1½ miles west of Avella, and other tunnels only a little further west and that the north walls of these tunnels were only 19 inches from the side of the train. No board could project northward four feet while passing through those tunnels. The court below in refusing to enter judgment n. o. v. for defendant said as to this: "It is possible that a board, which did not project more than 1.7 feet at the eastern portal of the Craighead tunnel, may have been jolted by the operation of the train into a position where it projected four feet when the train reached Avella Station." This may be conceded, but if the board was so jolted after the train left the tunnel 1½ miles west of Avella, the defendant company cannot be chargeable with knowledge of that fact during the ten or twelve minutes required for the train to travel 4½ miles from the eastern end of the Craighead tunnel to the point where the plaintiff was injured. We hold in this case, as we held in the Musto case (slightly paraphrasing it) : "There is no proof that the defendant knew of the projecting board or was chargeable with knowledge of it or failed to exercise reasonable care in making up its

train or otherwise showed any want of care toward any person who might stand within 4 feet of that train when it passed."

The judgment of the court below is reversed and is here entered for the defendant.