**SPEVAK v. PENNSYLVANIA R. CO.**

Civ. No. 6728.

United States District Court
W. D. Pennsylvania.

Oct. 18, 1948.

Evans, Ivory & Evans and John E. Evans, Jr., all of Pittsburgh, Pa., for plaintiff.

Dalzell, McFall, Pringle & Bredin and John R. Bredin, all of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

After trial the jury disagreed and was discharged. The defendant had offered no

testimony, but moved for judgment in its favor at the end of plaintiff's testimony, and has now renewed its motion.

The defendant has a main-line railroad between the boroughs of North Braddock and Braddock which has two west tracks on the North Braddock side and two east tracks on the Braddock side.

On October 4, 1945, at about 5:45 p. m. Victor Spevak, the plaintiff, was found on the second western track. A train had passed over both his legs, and each of them was later partially removed.

The plaintiff was the only witness of the accident. He stated that he left the house of his brother-in-law in North Braddock, proceeded along Bessemer Avenue to the Thirteenth Street bridge, which is between North Braddock and Braddock, and which has its south entrance close to the Edgar Thompson Steel Works. Coming to the bridge, he states, he found it closed for repairs. Thereupon, he went down the slope from the bridge entrance to a point about 150 or 200 feet east of the bridge. A long freight train was going west on the second track. Plaintiff stepped from the bank across a drainage ditch, to the first west track, and from the middle of the track until his advanced foot was over the second rail and he was about four feet from the train. Then plaintiff stated: "Well, I stood there * * * with my one foot over the second rail of the first track, when I seen that the train was just about to go by me, and, thinking that there may be another train coming along * * * thinking I had better get off that track, because another train is likely to come down and hit me, and by that time * * * well, as I looked up the track and down the track, whatever tendency made me look back again to see how far the end of the train was from me, then I had just a glimpse of a projecting rod that I think was * * * looked to have been the concrete reinforcement that was bent * * *." Plaintiff further stated that the "rod" was hanging over the edge of the car. Asked what he noticed about the car, he said: "Nothing other than it being a low car, that is, being a half a car, carrying the same thing that I seen projecting from the edge of the car, that struck me, the rod;

it was a twisted up rod." Asked by his counsel: "And when you turned around how far was that rod from you?" he stated: "It was right there. I mean I was dumbfounded, I didn't know what to do then." Asked what happened, he said: "Well, as I * * * the first thing I knew, something hit me then on the side * * * somewhere between shoulder level and the waist. And as it hit me, well, it kind of seemed as though there was a suction somewhere that pulled me toward the train * * *." His counsel asked plaintiff: "You say it was the same material that the car was carrying?" His answer was: "Yes." On cross-examination he was asked: "And you had a chance to see what was in that car?" His reply was: "No, of course I wasn't * * * I didn't look down into the car just at a moment's glance." Also, on cross-examination, after saying that he had been looking west, the direction in which the train was running, and then turning, he saw the rod which struck him, which was then a foot from him.

To justify a verdict for the plaintiff the testimony must disclose that plaintiff was injured on a permissive crossing of the Pennsylvania Railroad; that he was struck by an object overhanging a freight car of defendant which was part of the load of the car; that the defendant was negligent in the inspection and packing of the freight car; and that the testimony did not disclose contributory negligence on his own part.

It is necessary, in order to show an implied permissive crossing, to prove something more than mere passage over land. The circumstances must be such that the consent of the owner is to be inferred. The crossing must be over a definitely marked path. Without any physical designation of the way, consent to the passage is not to be assumed; and consent to the use of the crossing is not to be inferred where doubt exists as to the right. Conn v. Pennsylvania Railroad, 288 Pa. 494, 136 A. 779.

The testimony discloses that residents of North Braddock occasionally crossed the railroad, the general direction being to and

from the Edgar Thompson Steel Works, but not over any defined path, as the defendant, for the purpose of preventing its use, was accustomed from time to time to take definite steps to wipe out any traces of the use of the tracks by pedestrians. That particular effort to punish trespassers was not made was perhaps due to the later existence of the Thirteenth Street foot bridge, which furnished a safe and convenient passage to and from the Edgar Thompson Works. But above all, the examination of photographs of the scene of the accident will disclose full reason for lack of consent by the railroad. The danger of crossing should be apparent to all.

A permissive crossing does not appear in some of plaintiff's testimony. Paul Barron, a police officer, was asked by plaintiff's counsel: "Why doesn't the path show on the ground where it crosses the tracks?" He replied: "Well, they don't use it so much; just now and then somebody * * * because they aren't to cross over there * * *."

Robert Ford, on direct examination, was asked: "Do you know of the railroad ever having attempted to keep people off there (the tracks)?" He answered: "No. I heard people said before someone stop them; that was away before the depression." Asked if he had seen any signs prohibiting crossing, he said he had, a long time ago.

Michael Stasko was asked whether he knew of any person being prevented from using the "path", and stated that he had been told it was prohibited.

Proof of open, notorious and frequent use is only a part of what is required to show that a crossing is permissive. It is also necessary to prove that the circumstances indicate acquiescence by the railroad; and that does not appear in the instant case.

The instant case is almost identical in point of facts alleged with Musto v. Lehigh Valley Railroad, 327 Pa. 35, 48, 192 A. 888, 112 A.L.R. 842. In that case, the plaintiff did not go on the track but stood on the bank about six feet from it. In this position, an overhanging hooked projection, of the same description as the "rod" in this case, seized the plaintiff and hurled him under the train. After judgment below the Supreme Court reversed it, holding that plaintiff was not entitled to recover in the absence of proof that the projection was a part of the train's load; that defendant's employees knew of the projection or were chargeable with knowledge of it, or that the train had not been carefully inspected within a reasonable time before the accident.

The present case differs from the Musto case, supra, only in that the plaintiff in that case was on the bank, and was a licensee, while in this case the plaintiff had entered the track; and in the Musto case no testimony was offered to prove that the projection was part of the load of the car, while in this case a vestige of proof was offered to show that the rod, or pipe, was part of the load. That testimony was based upon no sure foundation. The plaintiff asserted that he had been facing in the same direction as the train until just before he was struck; that upon turning, he saw the rod or pipe a foot from him and he was "dumbfounded"; that in the instant between his sight of the rod and the rod striking him he was able, upon his counsel's leading question, to say that the load of the car was of like material to the "rod". If it be assumed that this testimony, if standing alone, was entitled to any consideration, credence of it should require careful weighing.

No tangible evidence was offered of the care, or lack of care, in loading the car. Some evidence was offered which tended to show, under general custom, it was examined a few miles from the place of the accident, but nothing to show any knowledge of the train crew as to any loading defect.

If the Court is correct in the conclusion that Victor Spevak was a trespasser when he entered upon the track of defendant, it follows that he has no right to recover. No wilful injury is claimed. But even if he were considered a licensee his testimony shows that he contributed to the accident by his own negligence. That testimony establishes that he was aware that

his position on the track was dangerous. True, the danger he contemplated was not the cause of the accident, but he knew that he had subjected himself to danger. Had he remained back of the guarding ditch, or even back of the first rail, the accident would not have occurred. Or had he observed ordinary care he would not have been injured. That care would have required him to look in the direction the train was approaching rather than the direction in which it was going. Danger to him was all from that side.

As indicating opinions of the Courts of undue proximity to moving trains, the following cases are noted: Baltimore & Ohio Railroad Co. v. Schwindling, 101 Pa. 258, 47 Am.Rep. 706; Moore v. Philadelphia, W. & B. Railroad Co., 108 Pa. 349; Pennsylvania R. R. Co. v. Bell, 122 Pa. 58, 15 A. 561, 562.

In the first of the cases cited the Court held that a boy, standing so close to a train that he was injured by a part of the car out of place, could not recover. In the second case cited the plaintiff, seeing a passing train on one track, and no train on a parallel track, stepped between the tracks and was injured by an approaching engine. It was held that his position between tracks was negligence per se. In the third case cited the Court, by Mr. Justice Green, said: "But, although not between the rails, he was so close to them that he was struck by some part of the approaching car, and he had no better right to place himself in such close proximity to the track than to stand between the rails of the track; and this was decided in the Case of Schwindling."

In adopting the passage over the track, the plaintiff chose a dangerous crossing when a safe one was available. At the Bessemer Station, about two blocks from the Thirteenth Street bridge, was an underpass of the tracks. With such a choice possible, plaintiff, because he thought it would require him to walk a slightly greater distance, was not relieved of the duty of choosing a safe passage.

The plaintiff in this case was very badly injured and the Court, therefore, has endeavored to give the defendant's motion very careful consideration. That consideration has lead to the conclusion that judgment must be entered for defendant.