## SPEVAK v. PENNSYLVANIA R. CO.
### No. 9833.

United States Court of Appeals
Third Circuit.

Argued Feb. 25, 1949.

Decided March 28, 1949.

John E. Evans, Jr., of Pittsburgh, Pa. (Evans, Ivory & Evans, of Pittsburgh, Pa., on the brief), for appellant.

John R. Bredin, of Pittsburgh, Pa. (Dalzell, McFall, Pringle & Bredin, of Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, WALLER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a personal injury, negligence suit. The jurisdiction of the court below was based upon the diversity of citizenship of the parties. At the trial the defendant offered no testimony but moved for judgment in its favor at the end of the plaintiff's case. The court denied the motion and allowed the action to go to the jury. That body disagreed and was discharged. The defense motion was then renewed and was allowed. Plaintiff appeals from the judgment thereupon entered in favor of the defendant.

Appellee's east and west-bound main line tracks pass between the boroughs of Braddock and North Braddock, Pennsylvania. Braddock lies to the south of the tracks and North Braddock to the north. There are two sets of tracks in each direction. In the immediate accident area at 13th Street the railroad has an overhead public foot-bridge. Plaintiff testified that this was closed for repairs at the time of the accident. There was another such bridge further west at 11th Street. This had no direct approach to it from the 13th Street bridge and there is no proof as to whether it was open for traffic during the period with which we are concerned. About a quarter of a mile to the east of the 13th Street bridge there was an underpass.

The accident happened around 5:30 P.M. October 4, 1945. From the testimony there was nothing unusual about the weather; lighting conditions were fair and it was just about getting dusk. Spevak, 27 years old at the time, had just previously arrived at his sister's home in North Braddock. He was on final furlough prior to discharge from the Air Corps. He left his sister's and started towards Braddock to call on his girl. He arrived at the 13th Street bridge and states that he found it closed. He said that he then

" * * * backtracked in the same path that had brought me up there from Bessemer Street and went down and followed the path right down to the railroad tracks." The west-bound set of tracks were nearest to him. At that time there was a freight train going west on the inside set of west-bound tracks. Spevak went upon the first set of tracks and seeing that the end of what was a long freight train was in view and thinking there might be another train coming along in the same direction, he put one foot in the space between the second rail of the first west-bound tracks and the first rail of the second set of tracks. At that time he was from three and a half to four feet away from the first rail of the second set of tracks. He looked up and down the track and then looked back again to the east. He caught a glimpse of a half-sided freight car carrying a load of the kind of rods used to re-enforce concrete. One of these projected from the car on Spevak's side. It was almost upon him when he saw it and as it passed him it struck him. There was kind of a suction somewhere that pulled him towards the train; he was knocked unconscious and the wheels of the train passed over his legs. As a result of this he lost both legs below the knees.

The main trial issues were: whether a permissive crossing existed at the place where plaintiff was proceeding across the tracks; whether there was evidence of negligence on the part of the railroad and whether plaintiff was contributorily negligent as a matter of law.

Five witnesses in addition to the plaintiff told about the path. First was Breskovic, a policeman in the Braddock steel mill which is located near the scene of the accident. He was the person who applied first aid tourniquets to Spevak's legs. He said the particular crossing was used daily, mostly by the mill people going and coming from work and that, "Ever since I remember, it [the path] has been there." He pointed out on the photographs which were in evidence where the path crosses the tracks. Barron, a North Braddock policeman, said that he with Lieutenant Cohill, went to the scene of the accident shortly after it happened and took Spevak to the hospital. He has been acquainted with the locality at least since 1923 and the path was there then and ever since and to his knowledge is used daily. He said he did not know of any precaution of the railroad to prevent people from crossing. On cross-examination he said, "Well, they don't use it so much; just now and then somebody—because they aren't allowed to cross over there, on account there is a lot of grass; and now and then they use it." On further cross-examination he was asked, "Did you say that not very many people walk across there?" And he answered, "Well I wouldn't say, you know, how many." Referring to one of the photographs he said as to the path, "It comes right across the railroad leading to the #2 gate." Robert Ford, who is a resident of North Braddock, was at the accident scene while Spevak was still lying there. He testified that Spevak was in the path. According to him the path had been there when he moved to North Braddock in 1928. He said, " * * * it is used a whole lot. I see plenty people using it" and it is used "Every day, just about every day." He was asked, "Do you know of the railroad ever having attempted to keep people off there?" He answered, "No. I heard people said before someone stop them; that was away before the depression." He was asked, "Did you ever see any signs around there?" He said he thought he saw some old ones, a long time ago in 1929 or 1930. He further said, "This path comes from the north end, comes down and across the track, going down the hill to the mill—across the car line to the mill." Stasko, another witness, had lived in North Braddock 24 years. He knew and had used the path many times. He was never told by anybody not to cross it and hasn't seen any signs down there since 1933. He said the path was used about once an hour. Tekach, Spevak's brother-in-law, who had lived in North Braddock for 24 years, said the path has been there all that while and was used by people. The plaintiff's photographs in evidence help in part to substantiate the testimony of the above witnesses regarding the path.

█ We think the above testimony creates at least a jury question as to whether the crossing was permissive and comes squarely within the Pennsylvania decisions on this subject. Conn v. Pennsylvania R. Co., 288 Pa. 494, 136 A. 779; Falchetti v. Pennsylvania R. Co., 307 Pa. 203, 160 A. 859; Francis v. Baltimore & O. R. Co., 247 Pa. 425, 93 A. 490. On that theory of the case, the railroad was bound to use reasonable care to avoid injuring Spevak. Smith v. Philadelphia & R. Ry. Co., 274 Pa. 97, 99, 117 A. 786; Taylor v. Delaware & H. Canal Co., 113 Pa. 162, 175, 8 A. 43, 57 Am.Rep. 446. So if Spevak's version of the accident is accepted, he was crossing the tracks where he had permission to do so. While thus engaged, a low open type freight car passed him, bearing a load of steel rods, one of which was projecting some distance beyond the side of the car. From the plaintiff's testimony if that rod had been properly loaded he would not have been hurt. There was evidence that all freight cars of the railroad in the Braddock area were inspected nine miles east of North Braddock and, as the lower court said, there was no question of " * * * the duty of the railroad to inspect and see the stuff is packed right." There was no evidence that anything unusual had happened to the car or its load of rods during the nine mile run from the inspection point. All this brings the situation sub judice close to the facts in Schultz v. Erie R. Co., 3 Cir., 46 F.2d 285, 286 where this court said:

"Under these proofs we have a situation in which an ordinary freight train, properly conditioned, would not inflict injury on a waiting crosser. But, instead of the passing train being in proper shape, the gondola car had fastened to its side a loose, swinging steel rope, long enough not only to reach the pedestrian but to swing about him and drag him."

█ Holding that the evidence was such as made the issue of negligence one for a jury, the nonsuit in that action was reversed. See also Smith v. Pennsylvania R. Co., 2 Cir., 239 F. 103, 104; Good-

pasture v. Simpson, 330 Pa. 225, 199 A. 222; Janock v. Baltimore & O. Railroad Co., 252 Pa. 199, 97 A. 205; Dorris v. Bridgeman & Co., 296 Pa. 198, 145 A. 827.

Appellee urges that the instant matter is controlled by the decision in Musto v. Lehigh Valley Railroad, 327 Pa. 35, 192 A. 888, 112 A.L.R. 842. The vital element absent in the Musto facts and present here is that Spevak says the iron rod that struck him was part of the freight car load. In Musto, as Chief Justice Maxey there commented, 327 Pa. at page 39, 192 A. at page 890: " * * * plaintiff did not show that the pole which he claims struck him was a part of defendant's train equipment or load or that there was any lack of inspection of the train on the part of defendant's servants or agents or that it had been there long enough to charge defendant with notice of its presence."

█ Finally, appellee contends that Spevak was contributorily negligent as a matter of law because he was standing on the first track within three and a half to four feet of the train, and, because he chose a dangerous way. In the Schultz case, supra, the plaintiff was standing about five feet away from the train when he was struck by the swinging tie rod. In that suit, the trial judge had held that " * * * plaintiff's testimony indicates contributory negligence on his part. From a position of safety beside the crossing, he placed himself in danger upon the tracks in proximity to the moving train." In reversing the court below, the opinion went on to say, 46 F.2d at page 286, "Without discussing the question whether his so standing was evidence of contributory negligence, certain it is that, if so, the question under the facts of this case was one for a jury, not the judge, to determine." That language accurately describes and resolves this problem. Plainly, whether Spevak was guilty of contributory negligence is a question of fact.

The judgment of the District Court will be reversed and the case remanded for a new trial.