## Schum *et al., versus* the Pennsylvania Railroad Company.

1. What constitutes negligence in a given exigency, is generally a question for the jury and not for the court.

2. Where a person is killed at a railroad crossing and there is no evidence whether he stopped, looked and listened or not, the law presumes that he did. This is a presumption of fact and may be rebutted.

3. A., while driving in a one-horse phaeton and crossing the track of the Pa. R. R. Co. at a public crossing, was struck by an express train and killed. His children brought suit against the company to recover damages. The carriage road at this point approached the railroad at an

acute angle, and the space between the two was so obstructed by trees and corn that, according to the plaintiff's evidence, a traveller approaching the railroad as A. did, could not see the track in the direction from which the engine came until he was within ten yards of it, and then, for only fifty yards from the crossing. The train was moving about forty miles an hour, and it did not appear that any signal of its approach was given. Nor was there any evidence as to whether A. stopped, looked and listened before attempting to cross. The court below granted a compulsory non-suit, on the ground that the evidence showed such contributory negligence on A.'s part as to preclude any recovery for his death.

*Held*, That the court was not justified, under the evidence, in saying as a matter of law, that A. was negligent; and that the refusal to take the non-suit was, therefore, error.

May 22, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lancaster county*: Of January Term, 1884, No. 293.

Case, by John E. Schum et al., children of Philip Schum, deceased, against the Pennsylvania Railroad Company, to recover damages for the death of their father, alleged to have been caused by the negligence of the company's servants.

On the trial, before LIVINGSTON, J., the evidence on behalf of the plaintiffs was to the following effect: On July 9, 1880, Philip Schum and his wife were driving southward in a one-horse phaeton on the road leading from the Lancaster and Middleton turnpike to Marietta, and about noon, while crossing the track of the Pennsylvania Railroad Company at Peiffer's Crossing, near Salunga, they were struck by the engine of the Niagara express, moving westward, and received injuries from which they both died within a few hours.

At the point where the accident occurred the carriage road crosses the railroad at an acute angle, and in the space north of the railroad and east of the carriage road was a field of corn. In the angle nearer the railroad was a willow tree and several locust trees and bushes. These obstructions, according to the testimony, so obscured the view of the railroad that a traveler approaching it from the north on the carriage road could not see the railroad toward the east until he arrived within about ten yards of the track, and then it was visible for only fifty yards east of the crossing, where the railroad turned sharply to the north and was lost to view behind a bank.

The train was moving at a rapid rate of speed, and it did not appear that any signal of its approach to the crossing was given.

At the close of the plaintiff's evidence the court granted a compulsory non-suit, and a motion to take off the same was refused. Whereupon the plaintiffs took this writ, assigning

[Schum *v*. Pennsylvania R. R. Co.]

for error, inter alia, the refusal of the court to take off the judgment of non-suit.

*Marriott Brosius*, for plaintiffs in error.—The law presumes that Schum looked and listened and exercised due care, and that presumption stands until disproved by direct and positive evidence to the contrary: Railroad Co. *v*. Weber, 26 P. F. S., 157; Same *v*. Same, 29 P. F. S., 390; Railroad Co. *v*. Weiss, 6 Norris, 447; Railroad Co. *v*. Werner, 8 Norris, 65; Railroad Co. *v*. Ritchie, 6 Out., 425; Penna. R. R. Co. *v*. Fortney, 9 Norris, 323. The fact that he was struck by a passing train does not show that he failed to exercise this caution: Weiss *v*. Railroad Co., 29 P. F. S., 330; Railroad Co. *v*. Weiss, *supra*. To declare as a proposition of law that Schum negligently approached this crossing because it appears as a fact in the case that he could see fifty yards down the track at a point ten yards from the crossing in the carriage road, is to say as a matter of law that no man can be injured at that crossing by a collision but by his own negligence, and the same of every other crossing in the Commonwealth similarly situated. If so, it follows that railroad companies need not give a signal of any kind at such crossings, and can run at any rate of speed without danger of being held liable for injuries caused thereby.

*H. M. North* and *E. D. North*, for defendant in error.—It is negligence in a traveller crossing a railroad track not to stop, look and listen: Pa. Canal Co. *v*. Bentley, 16 P. F. S., 30. The failure to stop immediately before crossing a track is negligence *per se*, and this is in the first instance a question for the court: Pa. R. R. Co. *v*. Beale, 23 P. F. S., 504; Hanover R. R. Co. *v*. Coyle, 5 P. F. S., 401; Central R. R. Co. of N. J. *v*. Feller, 3 Norris, 226; Carroll *v*. Pa. R. R. Co., 12 W. N. C., 348. The presumption that Schum did stop, look and listen was rebutted by the facts shown: Pa. R. R. Co. *v*. Weber, 22 P. F. S., 28; Same *v*. Same, 26 P. F. S., 168; Pa. R. R. Co. *v*. Fortney, 9 Norris, 324; Wilcox *v*. R. W. & O. R. Co., 39 N. Y., 358.

The widow lived two hours longer than her husband, and it follows that the cause of action was in the widow, and in any recovery her share would have been one-third of the amount, and her daughter would have inherited from her mother; if these plaintiffs can recover, they ignore the rights of the widow, and appropriate to themselves what should have gone to the widow and to her estate: Act of April 15, 1851, Purd., 1093; Act of April 26, 1855, Purd., 1094.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

On the 9th day of July, 1880, Philip Schum, accompanied by his wife, in a one-horse phaeton, was driving southward on the road leading from the Lancaster and Middletown turnpike to Marietta, and about the hour of noon, whilst crossing the track of the Pennsylvania Railroad at Peiffers, near Salunga station, in Lancaster county, both were struck by the engine of the Niagara express train, moving westward, and were killed. This suit is brought by the children of Philip Schum to recover damages for his death.

The carriage road crosses the railroad from the north at an acute angle, and, in the space north of the railroad and east of the carriage road, was a field of corn; in the angle nearer the railroad was a willow tree twelve or fifteen feet high, and also smaller locust trees and bushes. According to the testimony on the part of plaintiffs, the view of the railroad was, by these obstructions, so obscured, that a traveller approaching the railroad from the north, on the carriage road, could not see the track toward the east until he arrived at a point about ten yards from the track; and then it was visible only for a distance of fifty yards east of the crossing. The railroad, east of the crossing, curved sharply to the north, behind a bank in the corn field, and was lost to view; at a distance of about one-third of a mile it crossed the turnpike at Salunga station. The train was moving at a very rapid rate of speed—perhaps forty miles an hour—and it does not appear that any signal of its approach was given.

When the testimony on the part of the plaintiffs was closed, a compulsory non-suit was entered; a motion made to take off that non-suit was refused, and this is the error assigned. The non-suit was entered, not for want of evidence, to establish negligence, on part of the plaintiffs, but upon the ground that the same evidence which established negligence of the company proved negligence on part of the decedent contributing to the result.

What constitutes negligence, in a given exigency, is generally a question for the jury and not for the court. Negligence is want of ordinary care under the circumstances; the standard is, therefore, necessarily variable; no fixed rule of duty can be formed which can apply to all cases. A course of conduct justly regarded as resulting from the exercise of ordinary care, under some circumstances, would exhibit the grossest degree of negligence under other circumstances; the opportunity for deliberation and action, the degree of danger and many other considerations of a like nature, affect the standard of care, which may be reasonably required in a particular case. When

the standard shifts, not according to any certain rule, but with the facts and circumstances developed at the trial, it cannot be determined by the court, but must be submitted to the jury.

"But," as was said in McCully *v.* Clark, 4 Wr. 406, " there are some cases in which a court can determine that omissions constitute negligence. They are those in which the precise measure of duty is determinate, the same under all circumstances. When the duty is defined, a failure to perform it is, of course, negligence, and may be so declared by the court." The same doctrine is announced in Reeves *v.* Railroad Co., 6 Casey, 454; P. R. R. Co. *v.* Zebe, 9 Casey, 318; P. R. R. Co. *v.* Ogier, 11 Casey, 71; Carroll *v.* P. R. R. Co., 12 W. N. C., 348.

It has been held, that it is the duty of a traveller on the highway, when approaching its intersection with a railroad to look out for approaching trains, and that his failure so to do is not merely evidence of negligence, but negligence *per se :* Railroad Co. *v.* Heileman, 13 Wr., 60. Before attempting to cross the track of the defendant's road, it was the duty of the decedent, under any circumstances, and especially if the place was one of danger, or if the view was obstructed, to stop and look and listen for the locomotive; his failure to have performed that duty, which the law charged upon him, would have been negligence in itself.

However, as ruled in Railroad Co. *v.* Weber, 26 P. F. S., 157, it is not incumbent on the plaintiffs, in order to recover damages for the death of Philip Schum to show affirmatively, that before attempting to cross the track, he did stop and look and listen. The common law presumption is, that every one does his duty until the contrary is proved, and in the absence of all evidence on the subject, the presumption is that the decedent observed the precautions which the law prescribed. In the case at bar, no witness was called who saw the occurrence; there is no evidence whatever, whether in fact the decedent did stop and look and listen; the presumption is that he did, proof of that fact was no part of the plaintiff's case. The presumption is of fact, merely, and may be rebutted, but we are without evidence on the subject, all that we have is, that as he came upon the railroad, he was struck down by the locomotive.

It is argued, however, that at any point within ten yards from the crossing, on the carriage road, he might have seen the train for fifty yards, eastward along the track, as the track was plainly visible for that distance; that he was on level ground, in broad daylight, without obstruction, when there was no train from the other direction, and that if he had looked, he would have seen what must have been right before

his eyes; that if he did not look, he was negligent, and if he did, he was negligent, in attempting to cross in front of a train he could plainly see.  This proposition is certainly plausible, and has been most ingeniously and forcibly presented, by the learned counsel for the defendant in error, but we think it is not sound.  Starting with the presumption that the decedent did look, we may of course conclude, that he saw the advancing train, but whether he saw it in time to avert the accident is merely a matter of inference, or argument; from the moment the train was first visible, it was but two or three seconds until it was upon him; at the very moment the train came into view, he may have been in the act of crossing, the time intervening is too short to afford us any definite knowledge; we cannot precisely locate the phaeton at the time of the first appearance of the train, so as to define the decedent's duty.  If, when the train came into his view, he had not yet committed himself to the act of crossing, and was in a place of safety, it was his duty to remain there until the train passed; to have attempted to cross then would have been an undoubted act of negligence:  Gerety v. Railroad Co., 31 P. F. S., 274; Carroll v. Railroad Co., 12 W. N. C., 348.  The presumption is, that he saw the train, but what was his situation with reference to it, at the time he saw it, or in the exercise of diligence and reasonable care could have seen it?  If he had stopped ten yards north of the track and looked for the train he could have seen it, provided it was within fifty yards of the crossing; he may have stopped there to look and listen, and it may not have been visible.  We have no right to assume that it was; from that point, at the rate he was going, if he moved steadily forward, he was six seconds from the track, the train, from the time it became visible, was but two or three seconds, we may infer therefore that from the point ten yards from the track he did not see it.  Advancing towards the railroad, he may have fully undertaken the crossing before he saw the train; he may have reached a point in the passage, which involved more danger to withdraw than to proceed. The relative position of the phaeton and the train has been fixed by no one until the moment of the accident; and the whole subject of the decedent's duty is thus left open to conjecture and discussion.  How, therefore, can the precise measure of the decedent's duty be determined or defined by the court, when the facts upon which that duty is to be declared are unknown.

In the case of Carroll v. Railroad Co., 12 W. N. C., 348, it clearly appeared, from the evidence of the witnesses for the plaintiff, that they saw the train which struck the plaintiff, when it was at the eastern end of the depot, and that the

plaintiff could have seen it, from where he said he stopped and looked; the relative position of the plaintiff and the train, at the time, was ascertained. This court, therefore, correctly held that "it is in vain for a man to say he looked and listened, if in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive." We cannot declare the measure of duty incumbent upon Philip Schum until we know the circumstances in which he was placed; the mere fact of collision proves nothing, and the theory that the decedent, from a place of safety at the side of the track, might have seen along the track, for a distance of fifty yards, in the direction of the approaching train, certainly did not justify the court, under the circumstances of this case, in saying there was negligence on the part of the deceased, as matter of law. A man may fairly be presumed to see what he can see, when it is his duty to look for it, but he cannot be presumed to see at a particular time what is not shown to have been visible at the time.

The speed of the train, which gave but two or three seconds for deliberation and action; the time reasonably required for the decedent to cross the track after he had fully committed himself to the act; the absence of the usual warning of the train's approach; the topography of the ground, and the opportunities which the decedent had for self-protection were considerations, perhaps, from which the jury might have drawn an inference or arrived at a conclusion; but it is very clear that the court was in error, in defining a duty without any proper determination of the facts upon which alone that duty could be declared.

We have carefully read the evidence in the cause and find nothing upon which to rest the remaining assignment of error; no such question appears to be raised on this record, and we cannot consider it.

> The judgment is reversed, and a procedendo awarded.