## Mahaley et al. v. Stone et al.

*James S. Berger*, for receiver of Coudersport Trust Company.

*John W. Mahaley*, for executrices of A. N. Crandall and Park Methodist Episcopal Church, claimants.

*Paul W. Cauffiel*, for John F. Stone and Marion C. Stone, administratrix, claimants.

LEWIS, P. J., January 26, 1940.—Among the deposit accounts of the Coudersport Trust Company now in the hands of the deputy receiver, James G. Saint, for liquidation, is savings account no. 2503, showing a balance of $225.50 as of November 1, 1937, with accrued interest and no withdrawals since that date. On the books of the

trust company it appears in the names of "Rev. W. C. Wilbor, A. N. Crandall, and J. F. Stone".

Rev. W. C. Wilbor and A. N. Crandall are deceased. The savings account book was found among the latter's papers by the executrices of his estate. It bears the names of the three depositors in the handwriting of an employe of the trust company and, in addition, the following legend in the handwriting of A. N. Crandall:

"Memorial Fund for M. E. Sunday School for needy cases. This fund in trust to be administered by the Pastor of M. E. Church, the Sunday School Supt. and John F. Stone as trustees for such needy cases—children—as they deem best. Given by Mrs. John F. Stone as a memorial for her son, Clarence, who died."

The book shows but one deposit, $100 on February 26, 1910, and one additional withdrawal, $10, on December 23, 1916, with sundry interest credits to make the above-mentioned total.

Minutes of the governing body of the Methodist Episcopal Church of Coudersport were introduced in evidence showing that on February 19, 1910, the church treasurer was directed to deposit the "Stone Trust Fund" in the trust company, at interest "in the name of the trustees of this fund, to wit, John F. Stone, the Sunday school superintendent, and the pastor". On that date and on the date the deposit was made A. N. Crandall was superintendent of the Sunday school and Rev. W. C. Wilbor was pastor of the church. From Mr. Stone's evidence it appears his son, Clarence, died in 1898, aged 8 years. There is no other evidence whatever of the origin of the fund in dispute. The church minutes manifestly speak of a fund then in the hands of the treasurer. How long before February 19, 1910, it came into his hands is not indicated.

John F. Stone claims the fund as the sole survivor of the three persons in whose name it was deposited.

Miss Marion C. Stone, his daughter, claims the fund as administratrix of her mother's estate on the theory

that the gift was not valid and that her mother was not mentally competent to make it.

John W. Mahaley, as superintendent of the Sunday school of the Methodist Episcopal Church of Coudersport, claims the fund as a trust fund to be administered by the pastor of that church, the superintendent of the Sunday school, and John F. Stone, acting as trustees for the benefit of needy children in that Sunday school.

Mr. Stone evidently did not make the original deposit himself, for he says, on direct examination, that knowledge of the fund first came to him when the trust company was taken over by the receiver. Neither his testimony nor any other produced upon behalf of either of defendant claimants throws any light upon the origin of the fund. The affirmative evidence required to indicate an intention on the part of the depositor, whoever he was, to vest in John F. Stone a joint beneficial interest in the fund with right of survivorship is entirely absent. Therefore, his claim to the fund as the survivor of the three cannot be allowed: Zellner's Estate, 316 Pa. 202; Wilbur Trust Co. v. Knadler et al., 322 Pa. 17.

Miss Stone's claim depends upon the fact that the fund originated in a gift made by her mother. To trace the original gift to her mother she is entirely dependent upon the endorsement in A. N. Crandall's handwriting upon the bank book and other evidence produced by plaintiffs. The Crandall endorsement is in part a declaration against interest and as such it is competent, but it must be received in evidence in its entirety. Such portions as are not against interest are to be received prima facie: Yearsley's Appeal, 48 Pa. 531; Cooper's Estate, 320 Pa. 418. There is no evidence whatever to contradict them.

The record indicates a fully-executed and therefore valid gift inter vivos: Ries v. Ries' Estate, 322 Pa. 211.

It was impressed with a trust for a charitable purpose and, as there is no evidence whatever indicating any fraud in the transaction, it should be sustained: Longenecker v. Zion Evangelical Lutheran Church, 200 Pa. 567.

The gift was made on or prior to February 19, 1910. The testimony of Miss Fannie Perkins indicates that Mrs. Stone was in her own home the following December. From the records in the office of the register of wills (Docket L, p. 170) it appears Mrs. Stone died on May 9, 1935. Therefore, the Act of April 26, 1855, P. L. 328, 10 PS §12, relied upon by counsel for defendants, does not apply. The gift was made many years more than "one calendar month before decease". The position that no gift for charitable or religious purposes can ever be made by any other means than a deed or will is untenable. Note the language of Mr. Chief Justice Mitchell in Dulles' Estate, 218 Pa. 162, at page 164:

"Miss Dulles, living, could have taken her securities out of her strong box, and handed them to the appellants with directions, even verbal, to distribute them in their discretion among religious, charitable and benevolent objects or institutions. That disposition would have been valid and unassailable. There is no good reason why Miss Dulles, dead, should not make the same disposition of her property by testament."

When we approach the question of the donor's mental capacity, we must keep in mind the rule that " 'Sanity and mental capacity are presumed and the burden is on him who alleges the contrary' ": Patterson, Guardian, v. Snider et ux., 305 Pa. 272, 276. None of claimants' testimony to the donor's incapacity reaches back of February 26, 1910, whereas the gift was executed and the fund was in the hands of the church treasurer not later than February 19, 1910. Upon the question, Mr. Stone's testimony is as follows:

"Q. I call your attention to the date of February 26, 1910, and ask you if your wife was insane at that time?
A. Practically yes she was. I do not know.
Q. Did you have to incarcerate her February 26, 1910?
A. Shortly thereafter.
Q. Do you know the date you did incarcerate her?
A. Yes.

Q. What was that?

A. March 10th.

Q. And did you say that twelve days before her incarceration she was insane?

A. She was about . . ."

Miss Stone recalls the fact that her mother had to be placed in confinement March 10, 1910, and when asked about symptoms, the only information she gives is: "She couldn't sleep and then would become very nervous and we always tried to take care of her as long as we could". This had happened before and afterwards happened several times. Miss Perkins says Mrs. Stone had to be taken to the local hospital on March 10, 1910. All that she says regarding symptoms is: "She always began by not sleeping and very nervous and you could see her mind was not right." She was so much improved that she returned to her home in December 1910. Thereafter, from time to time she was better, at other times not so well. There were intervals when she was all right and others when she was not all right. The sum of the evidence falls far short of the required proof in a positive manner that the donor was, on or prior to February 19, 1910, mentally incapacitated to make a valid gift.

And now, January 26, 1940, in accordance with the foregoing decision, it is declared and decreed in manner following:

1. The fund in controversy is a trust fund for the uses and purposes quoted in the forgoing decision.

2. The trustees of said fund for its administration are the present pastor of the Methodist Episcopal Church of Coudersport, the superintendent of its Sunday school, and John F. Stone and their successors.

3. The said trustees are entitled to have and receive the said fund.

4. The said trustees are entitled to have such judgment entered in their favor and against all other parties to this proceeding as will properly effectuate this decree.

The prothonotary is directed to enter the above decree nisi, and to give notice thereof to counsel of record. Decree absolute and judgment thereon unless exceptions are filed within 30 days.