## Miller *v.* Gault et al., Appellants.

Argued March 26, 1942; reargued September 28, 1942. Before Schaffer, C. J.; Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*John H. Sorg,* for appellants.

*Robert M. Dale,* with him *Marshall & McCandless,* for appellees.

OPINION BY MR. JUSTICE LINN, November 23, 1942:

These appeals are from judgment on verdicts for plaintiff in a suit against two defendants to recover for the loss of the life of Mrs. James W. Miller, who was struck by a one-ton Dodge delivery truck driven by the defendant, Gault, engaged on the business of the other defendant.

The accident occurred after dark, November 10, 1939, on a three-lane highway, with concrete paving 30 feet wide, in a neighborhood stipulated by the parties to be "strictly rural" and where there was "no marked and designated crossing at or in the vicinity. . ." The weather was windy with "a storm coming up."

The question is whether the plaintiff made out a case free from Mrs. Miller's contributory negligence. We think her negligence clearly appears; nothing in the evidence offered by the defendants cures this defect, though we assume for present purposes that defendant, Gault, was negligent.

Mrs. Miller was a passenger in an automobile driven by Kenneth Tarr, traveling northward on Route 8 from Pittsburgh toward Butler. He stopped the car about three feet off the paved portion of the highway and on the

easterly berm, to allow Mrs. Miller to alight and cross the road to a spring. The car was stopped about 123 feet north of a point opposite the spring. To go to the spring on the opposite side, it would have been necessary to travel a distance, fixed by Tarr, "between 140 and 150 feet," by crossing the road diagonally or by going south along the east side of the road until she reached a point opposite the spring and then crossing the road. Mr. Tarr testified that he saw Mrs. Miller alight on the right side of his car and walk southward though he did not see what she did after passing the rear of his car. He dimmed his car lights and then observed, approaching from the north, the lights of defendant's truck proceeding south "around the curve" at a distance fixed by Tarr as "from 1500 to 2000 feet" away. Tarr got out of his car, rolled a cigarette and then heard a crash. There was no traffic on the highway other than defendant's truck, between the time Tarr stopped his car and the time when he heard the crash. Mrs. Miller's body was thrown to the west side of the highway, after being struck by the right front fender of defendant's truck. On the night of the accident, two Pennsylvania Motor Patrol officers questioned Gault about it. The plaintiff called these officers as his witnesses. Officer Barry testified that Gault informed him that Mrs. Miller was "in the center lane when I noticed her" and "appeared to be moving fast as though she was running . . . toward the west." Officer Krzton testified that Gault said Mrs. Miller was "approximately 20 feet from the front of his vehicle and apparently in the center of the road . . . traveling from east to west running."

It appears, as plaintiff's witnesses testified, that defendant's truck with lights burning, was visible from a distance of 1500 to 2000 feet when Mrs. Miller started southward from the car for the spring; that she had to go at least 140 feet to arrive there; that upon defendant's first glimpse of her, she was "approximately 20 feet" from his truck; that when she was struck, she was in the act of running westwardly across the road along which

Gault was proceeding. During the period she was moving across the highway it was her duty to look for and to see what was clearly visible; she must be taken as having seen the defendant's approaching truck and having carelessly attempted to cross in front of it.[1]

Counsel suggested at the argument that plaintiff was not bound by Gault's declarations as testified to by the two officers. The plaintiff put them in evidence and they are in for all purposes,[2] precisely as they would have been if plaintiff had called Gault for cross-examination, obtained the same answers without thereafter contradicting them.[3] In the absence of evidence of what occurred, plaintiff might have rested on the presumption that Mrs. Miller exercised due care, but plaintiff did not do that; he produced the evidence outlined above displacing the effect of the presumption[4] and is bound by the evidence.

The judgments are reversed and here entered for defendants.

DISSENTING OPINION BY MR. JUSTICE MAXEY, November 23, 1942:

I dissent from the majority opinion and I would affirm the judgment of the court below. I do not think that the negligence of the victim, Mrs. Miller, "clearly appears". Certainly the evidence of her negligence is not so clear that "there is no room for fair and sensible men to differ in their conclusions", and *that* is the standard by which to decide whether or not a question of contributory negligence should be submitted to the jury, as we declared in *McCracken v. Curwensville Borough*, 309

---

[1] See *Glancy v. Meadville Bread Co.*, 340 Pa. 452, 455, 17 A. 2d 395, 397; *Gajewski v. Lightner*, 341 Pa. 514, 516, 19 A. 2d 355, 356; *Guy v. Lane*, 345 Pa. 40, 43, 26 A. 2d 327.

[2] Cf. *Poluski v. Glen Alden Coal Co.*, 286 Pa. 473, 476, 133 A. 819, 820; *Harrah v. Montour R. R. Co.*, 321 Pa. 526, 528, 184 A. 666, 667.

[3] Cf. *Readshaw v. Montgomery*, 313 Pa. 206, 209, 169 A. 135, 137.

[4] See *Conley v. Mervis*, 324 Pa. 577, 587, 188 A. 350, 355.

Pa. 98, 115, 163 A. 217, and in other cases. When honest minds can reach different conclusions as to a victim's contributory negligence, the question becomes one for a jury and not for a court to decide.

Negligence being "want of care under the circumstances", Mrs. Miller's care or lack of it must be adjudged by the circumstances which confronted her. First, she was crossing a 30-foot unlighted highway after dark, as she had a right to do. This highway was straight 2,335 feet northward to a curve, from the point where Mrs. Miller alighted from the car driven by Tarr. Secondly, the defendant's truck was being driven at a reckless rate of speed. As Mrs. Miller started southward on the eastern berm of the highway, Tarr "noticed the lights of a car just breaking around the curve, coming down the grade", i. e., southward. This curve was 2,300 feet away. Tarr started to roll a cigarette and had "about finished" doing so "when a motor vehicle roared by and in less than a second a crash". When a car travels 123 feet in a second, its speed is 82 miles an hour. There is also very convincing circumstantial evidence as to the truck's grossly excessive speed. Mrs. Miller's body was lying between 50 and 70 feet beyond where it was hit and the truck came to a stop 70 feet south of her body. Thus it ran 120 to 140 feet after hitting her. From this fact alone the jury could find that Gault's speed was illegal and excessive. "The test of control is the ability to stop quickly and easily.": *Loran v. Rinehart*, 243 Pa. 231, 234, 89 A. 967; *Smith v. Wistar*, 327 Pa. 419, 423, 194 A. 486. Other proof of Gault's illegal and excessive speed were these facts: The headlights of the truck were bent back against the radiator; a large oval dent was made on the metal fender; the metal mounting of the rear-vision mirror was broken. One of Mrs. Miller's shoes was found 40 feet from her body and she was so mangled by the force of the "crash" that the record's description of her head and body injuries is shocking to one's sensibilities. This evidence clearly proves defendant's unlaw-

ful speed and lack of control. *Schoepp v. Gerety,* 263 Pa. 538, 107 A. 317; *Nalevanko v. Marie,* 328 Pa. 586, 590, 195 A. 49, 51; Huddy on Automobile Law, 9th ed., Vol. 17, p. 27; *Michener v. Lewis,* 314 Pa. 156, 159, 170 A. 272.

The third circumstance is that Mrs. Miller had a right to assume that persons driving on that highway were proceeding at a lawful speed. In *Adams v. Fields,* 308 Pa. 301, 162 A. 177, we said: "Everyone to whom a duty is due has a right to assume that it will be performed." In *Weiss v. Pittsburgh Railways Co.,* 301 Pa. 539, 152 A. 674, we said: "The mere failure to anticipate the negligence of another does not defeat an action for the injuries sustained." Of course, if a person about to cross a highway knows that a car is approaching at a speed which makes it dangerous to cross until the car has passed, it is that person's duty to wait, but here the *fourth* important circumstance is that Mrs. Miller cannot as a matter of law be chargeable with the knowledge that defendant's distant truck was coming *so fast* that she could not cross the highway in safety. The majority opinion says: "It was her duty to look for and to see what was clearly visible; she must be taken as having seen the defendant's approaching truck and having carelessly attempted to cross in front of it." (citing *Glancy v. Meadville Bread Co.,* hereinafter distinguished from this case). My answer to that statement is that the *truck* was "clearly visible", but its *speed* coming as it was down a straight and dark highway was not "visible", i. e., within Mrs. Miller's power of observation. It *is* carelessness to attempt to cross in front of a truck 30 or 35 feet away as in the *Glancy v. Meadville Bread Co.* case, supra, but it is *not* carelessness to attempt to cross a highway when a car is approaching at a presumably lawful speed, 2,300 or even 1,000 feet away. To convict Mrs. Miller of negligence it would have to be shown that she was *chargeable with knowledge* that the truck was coming so fast that she could not cross the road safely until the truck had passed. Whether or not she was *so chargeable* was

for the *jury's* and *not* for the court's determination. A person experienced in judging the speed of cars, can if standing by a highway judge the speed of a passing automobile. No person standing near a highway at night and looking down a straight and dark road, at the headlights of an oncoming car far away can form any fairly accurate estimate of that approaching car's speed, for the reason that he cannot see any *stationary objects* along its path which will enable him to judge its speed. This is a matter of common knowledge and a fact verifiable by observation. There is no proof in this record that Mrs. Miller had any experience in judging the speed of cars under any conditions. When she saw this defendant's car approaching *in the distance,* only the car's headlights being visible to her, she had a right to *assume* that the car was running at a lawful rate of speed. It is the law of this State that "No person shall drive any vehicle upon a highway . . . at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." : See 1002 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751. In *Mason v. C. Lewis Lavine, Inc.,* 302 Pa. 472, 153 A. 754, this court in an opinion by the present Chief Justice said: "A car should be so driven that it can be stopped within the range of its lights." In *Gaber et ux. v. Weinberg,* 324 Pa. 385, 387, 188 A. 187, we said: "The rule [just quoted] is inflexible." The evidence in this record supports the inference that Mrs. Miller was already *in* the road and past its center line when the range of defendant's lights reached her and *then* the truck was "roaring" down upon her. Under these circumstances, the most obvious thing for Mrs. Miller to do was to attempt to run out of danger. She did run but the "danger" was approaching her so fast that her attempt failed and she was killed. Had the defendant Gault been operating his truck at the speed the law required, which was the speed Mrs. Miller had a right to assume that he was operating his truck, she could have reached a place

of safety before the truck passed. I find no case in the reports where a person has been adjudged in law guilty of negligence in starting to cross a 30-foot highway when only one car is within view and that car is *at least* 1,000 feet away. If Gault was running the truck at a speed of 50 miles an hour, it would have taken him over 30 seconds to get from the curve to the place where Mrs. Miller was. If the driver of the truck had been running at a speed which would have enabled him to stop within the clear range of his lights he would, of course, have been running at a speed much less than 50 miles an hour. A person usually walks at a speed of 4 miles an hour or about 6 feet a second. Mrs. Miller could have crossed the 30 feet of that road in 5 or 6 seconds by walking at a normal gait. She had a right to assume that the oncoming car in the distance would not run her down if she crossed the 30-foot highway at the time she did. She had additional reasons for assuming that the car was approaching at a proper rate of speed because the visibility that night was not good. Defendant Gault testified: "It was very dark and gusty and a lot of wind and dirt in the air. There was pending a storm." Under those circumstances no one would expect Gault to drive his truck at such an excessive speed. That Gault was inattentive and therefore reckless is shown by his own admission that he did not see Mrs. Miller until he was within 20 or 25 feet of her and this was in spite of the fact that his headlights lighted the road for a distance of 200 to 250 feet and the fact that Mrs. Miller must have been in plain view for she had crossed the 10 feet of the easterly lane and the 10 feet of the center lane and 5 feet of the 10-foot westerly lane when she was struck. All of the time she was travelling these 25 feet she was within the view of this truck driver, if he had been attentive.

Since Mrs. Miller was killed in this accident, the presumption is that she exercised due care and I find in this record no testimony whatever to rebut this presumption. Certainly in the light of this presumption and all the cir-

cumstances of the case the question of her alleged negligence was for the jury. A person who is killed in an accident "is entitled by the settled rule of law to the presumption that he did his duty.": *Hanna v. Phila. & Reading Ry.,* 213 Pa. 157, 62 A. 643. This court said in *Schum v. Penna. R. R. Co.,* 107 Pa. 8, 14, ". . . the opportunities which the decedent had for self-protection were considerations, perhaps, from which the jury might have drawn an inference or arrived at a conclusion; but it is very clear that the court was in error, in defining a duty without any proper determination of the facts upon which alone that duty could be declared."

This is not a "darting out" case where a person suddenly leaves the curb and runs into or ahead of a car and is injured or killed. This is like the case of *Smith v. Wistar,* 327 Pa. 419, 194 A. 486, where this court refused to declare negligent as a matter of law a woman who was struck by an automobile while crossing a thirty-six-foot street. We there said: "This is not a case where the pedestrian stepped directly in the path of a moving car, but rather one where the pedestrian, already engaged in making the crossing, was justified in believing that passing motorists would have due regard for her safety." In that case the victim was crossing at an intersection in a city; in the instant case the victim was crossing a highway in the country and there was nothing unlawful per se in her crossing at that point. This case should also be ruled by our decision in *Maselli et al. v. Stephens,* 331 Pa. 491, 200 A. 2d. 590, where we held that when the plaintiff-victim who had started across a highway and then saw the headlights of an approaching automobile "ran the last few steps in an attempt to reach the curb but was struck by the car before she could do so", she could *not* be declared guilty of contributory negligence *by the court.* We said (p. 496) : "Clearly this was a case for the jury. . . . Under the decisions of this Court it is not required that she choose what might have been a safer course, nor to exercise the best judgment whether

she should advance, retreat or stand still in an emergency which she did not create." It cannot be said as a matter of law in the instant case that Mrs. Miller created the "emergency" which confronted her. The emergency was created by Gault's grossly excessive and unlawful speed. It is an inescapable inference that had the defendant been running at a lawful rate of speed and had been able to stop his truck within the range of his lights Mrs. Miller could have crossed the highway without being struck by defendant's truck, for she was within 5 feet of a place of safety when killed, and to this safe place she was running when the defendant's truck ran her down.

I regard the case of *Glancy v. Meadville Bread Co.,* 340 Pa. 452, 455, 17 A. 2d 395, cited in the majority opinion, as wholly inapplicable to this case. There we said (quoting from the court below in that case) : "It clearly appears from the testimony that the truck must have been a much closer distance—within not to exceed 30 to 35 feet—from the point of accident, when plaintiff looked and started across the road, as he took but a few hurried steps before he was struck by the truck." Of course, if a person starts across a highway in the face of a truck only 30 or 35 feet away, he is negligent. Here the testimony of Tarr is that after Mrs. Miller alighted from his car to cross the highway, defendant's truck was coming around the curve more than 2,000 feet distant. The case of *Gajewski v. Lightner,* 341 Pa. 514, 19 A. 2d 355, cited in the majority opinion is likewise inapplicable here, for there the victim "run into" the pathway of an oncoming car travelling 55 to 60 miles an hour only 100 feet from him, when he could have remained in safety "in the 19 feet intervening on the north side of the street." In the instant case there is no evidence that Mrs. Miller ran into the path of the oncoming truck when it was only 100 feet away from her. It is a fair inference that she was already in the western half of the highway when the defendant's swiftly moving car was much more than 100 feet away and that upon discovering her peril

she did the natural thing to do under the circumstances, to wit, to run to the edge of the road nearest her, within 5 feet of this edge she was struck. As this court said in *Weiss v. Pittsburgh Railways Co.*, supra, "His [plaintiff's] acts with regard to negligence must be judged from the circumstances as they then appeared. In his position one is not required to exercise the highest or even ordinary degree of judgment; it is a judgment arising from peril or care under the circumstances."

The other question in this case is: Was the plaintiff bound by Gault's declarations as testified to by the two police officers? To hold that the plaintiff is bound by the statements made by this defendant, Gault, is to my mind in complete conflict with the applicable law in such cases as enumerated by text writers and by this court in numerous decisions. Plaintiff had a right to put in evidence Gault's declarations without being bound by them exactly as a district-attorney can put in evidence a defendant's statements or confessions without being bound by them. The rule is precisely the same in both civil and criminal cases and in the entire domain of law no rule is more unqualifiedly established than this, to wit, that when a statement or an admission made by a defendant is put in evidence by a plaintiff, a self-serving declaration of the defendant contained in that statement or admission *does not have to be accepted by the jury as true.* Henry's Trial Evidence, 3rd ed., sec. 59, declares: "The jury may believe the admission against himself and yet refuse to credit his statement in his own interest." In *Heyman, Admrx., Aplnt., v. Hanauer*, 302 Pa. 56, 62, 152 A. 910, this court said in an opinion by Justice FRAZER: "Where, as here, admissions against interest and self-serving declarations are found in the same writing, and the other party wishes to take advantage of the admissions, it becomes necessary to offer the whole of the writing, even though part of it may contain matter favorable to the party making it: *Yearsley's App.*, 48 Pa. 531, 534. However, parts against his interest are entitled to

greater weight than those in his favor (*Greenawalt v. McEnelley*, 85 Pa. 352, 356), and the jury may believe the admissions against himself and yet refuse to credit the statements in his own interest (*Thommon v. Kalbach*, 12 S. & R. 238, 239) ; and the party offering an admission is not bound by self-serving declarations contained in the offer, but may introduce evidence to disprove them: *Yearsley's App.,* supra. The court below properly charged that defendant was not bound by recitals favorable to plaintiff, merely because defendant had offered them in connection with evidence of the admissions set forth. The evidence as a whole was for the jury."

In *Thommon v. Kalbach*, 12 S. & R. 238, Chief Justice GIBSON, speaking for this court, said as to admissions in civil cases: "The jury if their consciences be satisfied, by circumstances aliunde, may disregard those parts of a confession which go to avoid the effect which the other parts of it would otherwise have." In *Newman v. Bradley*, 1 Dall. 240, this court said: "There are some occasions when a jury will charge a man with what he acknowledges against himself, and yet refuse to credit him for what he advances in his own favor." It was also added that "the jury will not be influenced by the defendant saying [in his admission, put in evidence, that he bought the goods] "he repaid the money, *if they do not think it credible* [italics supplied], or if anything can be gathered from the evidence, to show that it was not paid, when he says it was."

In *Roberts' Appeal*, 126 Pa. 102, 17 A. 538, it was held that when a book containing self-*dis*serving entries is received in evidence to establish a claim, it is *not* required that *all the other entries* shall be accepted as verity.

The rule requiring that *all* of a confession or admission be put in evidence by the party offering it but that the jury is *not bound to* accept the exculpatory portion *prevails in both criminal* and *civil* trials. "It is for the jury to say what weight shall be given to the several parts of the statement, for they may well believe that

part which charges the prisoner and reject that part which tends to exculpate him": 20 Am. Juris., sec. 488, p. 425. "The rule which renders self-serving statements inadmissible is the same in criminal prosecutions as in civil actions.": 20 Am. Juris., sec. 558, p. 471. As to confessions introduced in evidence, Wigmore on Evidence, Third Edition, Vol. 7, page 495, sec. 2100, says: "In many of these rulings, it is a favorite cautionary addition that the exculpatory part *need not be believed;* the opinion in *Tipton v. State, Tenn.,* Peck, 307, 314, perhaps best phrases this; it is never denied, and citations in detail are unnecessary. As a warning or help to the jury, this statement may be desirable. But obviously it is in law a superfluous statement. No witness *need* be believed (*ante,* section 2034); the jury may always believe as much or as little as they please of his testimony."

The majority opinion cites *Readshaw et ux. v. Montgomery,* 313 Pa. 206, 169 A. 135, and *Conley et al. v. Mervis,* 324 Pa. 577, 188 A. 350, and other cases in support of the holding that the plaintiff was bound by the officers' testimony as to what Gault said about Mrs. Miller running. The majority opinion thus relies upon a rule of law which is wholly inapplicable to the situation presented here. That rule is based on the Act of May 23, 1887, P. L. 158, which provides that "in any civil proceeding a party to the record may be compelled by the adverse party to testify as if under cross-examination and the adverse party calling such witness shall not be concluded by his testimony". We held in the cases above referred to that one who calls an adverse party as upon cross-examination is concluded by his testimony, if uncontradicted. In the case now before us, plaintiffs did *not* call the defendant, Gault, an adverse party. Plaintiff called the police officers to testify to Gault's *statement to them* as to "how close he was to Mrs. Miller when he saw her" and "where she was located on the three-lane highway at the time he first observed her." On cross-examination officer Barry stated that Gault said "She [Mrs. Miller]

appeared to be moving fast as though she was running."
Officer Krzton testified to the same thing on direct examination, i. e., that Mrs. Miller was "approximately 20 feet away . . . travelling from east to west running." The jury thus had before it from the lips of two witnesses a statement made by the defendant Gault not under oath, *to them,* the witnesses. The jury could accept as absolute verity the testimony of these two witnesses as to *what Gault said to them,* but, first, the jury was not bound to accept as verity all of Gault's statement to these officers any more than a jury in a criminal case is bound to accept as verity all the declaration made by a defendant who confesses to an officer the commission of a crime. In such confessions defendants usually inject self-serving declarations. It is always for the jury to determine what part of a defendant's statement it will accept and what part it will reject, and the rule is the same in both criminal and civil cases. Secondly, even if Mrs. Miller was "running" when this truck was bearing down upon her, that fact does not convict her of negligence. This court has never held that when a person sees a motor vehicle twenty feet away bearing down upon him that person must stand still or incur the liability of being adjudged negligent.

In *State v. Laliyer,* 4 Minn. 368, the Supreme Court of that state said: "The jury were not bound to take as true the statement most favorable to the prisoner, nor indeed anything he may have said in his own favor, merely because the state used it against him. They might have rejected as improbable, or inconsistent with all the circumstances of the case, any one of these confessions, or any portion thereof." It was said further that the defendant was entitled to "the benefit of whatever he may have said in his own favor *which the jury should find to be true."* [Italics supplied.]

In *Brown v. Commonwealth,* 9 Leigh (Va.) 633, the Supreme Court of Virginia said: "When the confession of a party, either in a civil or criminal case (for the rule

is the same in both) is given in evidence, the whole, as well that part which makes for him as that which is against him, must be taken together and go to the jury as evidence in the case."

In *Lucier v. Norcross* (310 Mass. 213), 37 N. E. (2d) 498, 137 A. L. R. 749, the facts were that plaintiff intestate while on a public highway at night was killed by an automobile operated by the defendant. The issues were defendant's negligence and the deceased's contributory negligence. On the latter issue, the Supreme Judicial Court of Massachusetts, after calling attention to the presumption that deceased exercised due care, said: "There is little or no evidence as to what the deceased was doing or how he was proceeding. He was seen only by the defendant and then at the instant when he was hit. All the evidence in the case having any tendency to prove that the deceased was in a position of unnecessary danger or was negligent came from the defendant. But the jury were not obliged to believe the defendant."

The evidence in this case is that when Mrs. Miller alighted from the car to cross the highway, defendant's truck was over 2,000 feet away, that it was running at a grossly excessive rate of speed, though this fact could not have been obvious to Mrs. Miller, who was in no position to judge of the speed of an oncoming truck 2,000 feet away, even if she was qualified so to judge it, that Gault, as he himself testified, did not observe Mrs. Miller until "she was about 25 feet in front" of his truck, that she was then more than two thirds across the highway and according to Gault's statement to the police officers and his own statement on the stand, "she was running". That Mrs. Miller was running from the instrument of death roaring down upon her certainly does not convict her as a matter of law, of contributory negligence or overcome the *presumption* which belongs to the plaintiff that the deceased was when killed *exercising due care.* When a person is confronted as Mrs. Miller was with imminent peril, due to defendant Gault's gross negligence,

she responded to one of the strongest and most primitive of human instincts in attempting to run from a place of danger to a place of safety only a few feet away.

I would affirm the judgment of the court below.

Mr. Justice STERN concurs in this opinion.