## Gordon, Appellant, v. Wismer.

Argued May 26, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Fred T. Cadmus, III,* for appellant.

*John M. Kurtz, Jr.,* for appellee.

OPINION BY MR. JUSTICE BOK, June 30, 1960:

This is a suit by husband and wife arising out of an accident to the wife, who was struck by defendant's car while she was afoot and crossing Main Street in Spring City, Chester County. A jury awarded her $8000 and her husband $3236.50, and they filed separate appeals when the court below granted judgment for defendant n.o.v. Both appeals were quashed for some reason not now of concern, and later the wife's appeal alone was reinstated. This is what we will now consider. Defendant also filed a motion for a new trial based on the conventional reasons, but it has not been pressed or argued.

Judgment was given because the court below considered the wife guilty of contributory negligence.

The evidence discloses that she was going to work at seven o'clock in the morning of June 29, 1955. It was light, clear, and dry. Her husband, driving their car, let her off at the curb opposite the entrance to the plant where she worked. To get there she had to cross Main Street, which ran north and south and was about thirty-three feet wide. Her point of crossing was midway in a block some 1200 feet long, and cars were parked solidly along the east and west sides of the street. Mr. Gordon got his car in to the curb by stopping beside a fire plug.

Plaintiff got out, walked to the rear of the car, which then drove off, and walked forward into the street about seven feet to a place where she could see, and looked both ways. She saw nothing except a double-parked car to her right that was stopped to unload a passenger. She then hurried forward and when she

was at some point at or near the center of the street she was hit and at the same moment saw a flash of green. As she stopped rolling she heard the screech of brakes. She never saw the car that hit her and it is conceded that she did not look after she left the point a car's width from the west curb where she looked both ways.

There were skid marks thirty-eight feet, eight inches long, and the police chief who measured them testified that they led to defendant's front and rear wheels. There was no painted white line to mark the center of Main Street, and the police chief said that the skids were in the easterly half of the street "with the exception of the ending of them": it looked to him as if the car had swerved to the left, but he still put the marks "a little off", that is to the east of the approximated center. He said that the clear space between the two lanes of parked cars was such that "you couldn't get the ambulance through, hardly." And plaintiff described it as "pretty tight, but there was room" for two-way traffic.

Defendant's negligence is conceded. He saw plaintiff and hit her at the same instant, and at one point he was asked whether he was entirely on his right side of the street: his answer was, "Well, I don't know."

Under the conditions outlined, and with all inferences favoring the verdict winner, we cannot say that reasonable minds could not differ on the central question of contributory negligence: *Nugent v. Joerger,* 387 Pa. 330 (1956), 127 A. 2d 697.

It is obviously not clear how close to the unmarked center of the street the defendant was driving; whether, if it was very close, the car overhung the center; how close to the center Mrs. Gordon was; whether, in view of her hurry and the brief time it must have taken her to go from the point where she looked to the point

where she was hit, the look she made was the equiva-
lent of a look upon entering the northbound lane, es-
specially when she saw nothing in motion; where de-
fendant's car was, in relation to the plaintiff, when it
began its skid; and what the police chief meant when
he said, in possible self-contradiction, that the skids
were all to the east of the center of the street, or "a
little off" the center, or all to the east "with the excep-
tion of the ending of them."

We do not think that these matters emerge with the
pitiless clarity necessary to take away the plaintiff's
verdict. It is the law that a crossing pedestrian must
look before committing himself to the street and must
continue to look: *Gatens v. Vrabel,* 393 Pa. 155 (1958),
142 A. 2d 287. But we are mindful that plaintiff looked
at a safe point—safe because she was shielded by the
parked cars—seven feet into the street, with only 9½
feet to go to the center. It would have taken her only
a second and a half to go that distance at the normal
gait of four miles per hour: *Miller v. Gault,* 345 Pa.
474 (1942), 29 A. 2d 71. Since she was hurrying, it
may well have taken her less time: *Martino v. Adourian,*
360 Pa. 580 (1949), 63 A. 2d 12. With such a micro-
scopic interval of time, the jury may have felt that her
look and her self-care were sufficient.

We consider applicable our outlook expressed as fol-
lows in *Mackin v. Patterson,* 270 Pa. 107 (1921), 112
A. 738: "How far the accident happened from the east
curb is not definitely shown, but approximately twenty
feet; whether plaintiff should have looked again to the
south, while walking that distance, .depended upon the
surroundings, and was for the jury: Anderson v. Wood,
supra [264 Pa. 98]; . . . Healy v. Shedaker, 264 Pa. 512.
A pedestrian must exercise continued vigilance while
crossing a street (Lorah v. Rinehart, 243 Pa. 231);
but just where he should look depends upon shifting

conditions and is a question of fact rather than of law."

It is necessary to distinguish our recent decision in *Shuman v. Nolfi,* 399 Pa. 211 (1960), 159 A. 2d 716. In that case a street thirty feet wide was divided in three lanes of ten feet each. The street ran north and south and the westerly lane was used for parked cars. Plaintiff, walking south on the west sidewalk, saw a friend driving north in the easterly lane wave to him to pick him up. To get there he had to cross the lane of parked cars and then the southbound lane. As he left the curb he looked left and saw a truck coming south. He walked out into the street between two of the parked cars and at their edge saw the defendant 175 feet away. He went on four or five steps and when he looked again the defendant's car was on top of him. He was hit at once. There were 24-foot skid marks twelve feet east of the west curb and 2.5 feet from the line dividing the two traffic lanes, respectively, and two blood marks in front of the western skid mark, also twelve feet from the west curb and 4.5 feet east of the parked cars. On defendant's truck there was a dent on the right front between the right headlight and the center of the grille.

It was clear that plaintiff had entered the near lane of the street and had been hit almost at once, admittedly without continuing to look after having once seen the oncoming truck. He must have been moving slowly. We affirmed the grant of a compulsory nonsuit.

In the instant case the wife plaintiff looked but saw nothing and moved quickly towards the center. She was struck by a car moving not in the near lane but in the far lane, and the evidence is not clear where she was or just where the defendant's car was, and hence a jury was needed to establish the conflicting and uncertain mise-en-scène.

The two situations are obviously different.

The judgment is reversed and the record is remanded for disposition of defendant's motion for a new trial.

Mr. Justice BELL dissents.